The government has moved to transfer this government contract case to the General Services Administration Board of Contract Appeals (Board) pursuant to section 10(d) of the Contract Disputes Act of 1978 (Act), 41 U.S.C. § 609(d) (Supp. II 1978), because four other cases arising out of the same contract have been filed with the Board. Plaintiff opposes this motion and has moved to stay proceedings in this court until the Board proceedings have been completed. We grant the government’s motion and deny plaintiffs motion, and transfer this action to the Board.
*581 HH
The plaintiff, a construction company, was awarded a fixed-price contract to perform stonework and masonry work in conjunction with the construction of a new federal office building in New Haven, Connecticut. Plaintiff filed with the contracting officer six claims for additional compensation. Each claim was denied. Four were decided by the contracting officer prior to the effective date of the Act and have been appealed to the Board. The remaining two, decided after the effective date of the Act, are consolidated in this direct access proceeding before us under 41 U.S.C. § 609(a). See Warwick Construction, Inc. v. United States, 225 Ct.Cl. 567 (1980).
A general description of each claim follows:
A. GSBA No. 4991 (Foamglass Insulation). Plaintiff sought an equitable adjustment because it was required to use steel studs in installing 4-inch glass insulation to masonry walls. Plaintiff contended that the specifications did not indicate that steel studs should be used. The Board, in a decision entered September 30, 1980, denied the claim and remanded to the contracting officer to determine a downward equitable adjustment due to the government because of plaintiffs "failure to stick up the 4-inch foam-glass insulation blocks with mastic.”
B. GSBA No. 4992 (Storage Space). Plaintiff sought an equitable adjustment because of the unavailability of a proposed storage area which, plaintiff alleged, the site plans indicated was available. Plaintiff contended that this situation caused delivery and construction delays. The Board, in a decision entered October 28, 1980, denied the claim.
C. GSBA No. 5010 (Limestone Coping). Plaintiff sought an equitable adjustment for being required to install coping stone with a return lip, which it asserts was contrary to contract drawings. The Board, in a decision entered January 30, 1981, denied the claim for the increased cost of providing coping stones with a lip, the additonal effort involved, and any delays encountered. The Board, however, upheld plaintiffs claim for the "additional effort required to cut the lip . . . from the coping stones for the balconies” *582 and remanded to the contracting officer to determine damages.
D. GSBA No. 5090 (Spandrel Beams). Plaintiff sought an equitable adjustment due to the misalignment of the spandrel beams. The Board has not yet held a hearing on this claim and has suspended further proceedings on it pending the outcome of the litigation presently before us.
E. Ct. Cl. No. 396-80C (Omnibus Claim). This case, presently before us, consists of two counts or claims. Count I challenges the contracting officer’s decision of July 31, 1979, denying plaintiffs impact and delay claim for 234 calendar days of extended time and additional compensation of $565,341. Count II challenges the contracting officer’s decision of June 6, 1980, refusing to release to plaintiff the final contract balance of $56,750.
n.
When multiple suits arise under the same contract, section 10(d) of the Act permits us, "in the interest of justice” to "transfer any suits to or among the agency boards involved.” 41 U.S.C. 609(d). The legislative history admonishes us to "be sensitive to the reasons why the suits have been split [between this court and the Board], and. . . not consolidate only for the sake of consolidation.” S. Rep. No. 95-1118, 95th Cong., 2d Sess. 31, reprinted in [1978] U.S. Code Cong. & Ad. News 5235, 5265.[1] The Senate Report continues:
The Court of Claims, when reviewing the decision to consolidate, should not arbitrarily take away the contractor’s right to his day in court by consolidating two suits in the agency boards, and thus forcing one suit out of the court. It is the intent of this section to make available the opportunity to consolidate like suits in one jurisdiction, *583 but this action should weigh the position of the parties involved.
Thus, we must balance the plaintiffs reasons for splitting the suits against the government’s interest in consolidating the cases before the Board.
A. The petition in the case before this court overlaps with the four claims before the Board.[2]
Count I of the petition before this court apparently is an omnibus claim intended to encompass all impact and delay claims arising under the contract. As such, it also covers the claims contained in GSBA 4991 (Foamglass Insulation),[3] 4992 (Storage Space),[4] 5010 (Limestone Coping),[5] and 5090 (Spandrel Beams).[6] The petition, however, goes much further, and includes many additional factors contributing to the delay. Count II involves the same underlying factual issues since it is based upon the government’s retention of *584 money due under the contract for "unsatisfactory job progress and deficiencies.”
Plaintiff contends that this case is similar to the example given in note 1, supra, of a situation where Congress believed that consolidation would be inappropriate. It states that the claims before the Board are all "small” and are being handled under the accelerated procedures of Board Rule 12 for claims involving $25,000 or less. On the basis of the papers before us, we cannot decide whether these claims are small and being handled under accelerated procedures.
In a letter to the Board’s Administrative Judge dated November 30,1979, plaintiff indicated that the parties had decided at a pretrial conference that the hearing would be limited to
the issues of liability alone, on each of four appeals. Further, in view of the consolidation of the cases and the aggregation of amounts, the appellant believes that it would not be appropriate to apply Rule 12 accelerated procedures to the consolidated proceedings. Accordingly, appellant withdraws it’s [sic] request for accelerated processing under Rule 12.
The Administrative Judge, in a letter dated December 5, 1979, allowed plaintiffs request. However, only three cases were actually consolidated and, in each, the Administrative Judge stated that plaintiff proceeded "under the optional accelerated procedure provided by our Rule 12.” The government contends that this statement was erroneous.
Furthermore, we are unable to determine the comparative size and substantiality of the Board claims as against the omnibus claim here.
B. In a recent case involving section 10(d) of the Act, we decided, sua sponte, to transfer an omnibus claim before this court to the Board. Warwick Construction, supra. In Warwick Construction, the plaintiff requested that we consolidate four cases before the Board (involving appeals from decisions of a contracting officer rendered prior to the effective date of the Act) with an omnibus claim that had been filed directly in this court. We held that we could not consolidate the Board cases in this court because they involved decisions rendered by a contracting officer prior to *585 the effective date of the Act and that "Congress [had not] explicitly consented to accelerate the date of consent in the Contract Disputes Act” with regard to such cases. (Emphasis in original.) In transferring the omnibus case before this court to the Board, we reasoned that:
We are in no position to determine what portion of the work on the claim or claims the board has done, but certainly it is more than a scintilla. We conclude that the cases ought to be consolidated in one tribunal, that the nexus of time considerations runs throughout several of them, and that consolidation would be in the interests of justice.
In Warwick Construction, the plaintiff stated that the amount of the overlap claims was $202,836 out of $634,992, or 32 percent. Although we are unable to determine what portion of plaintiffs Count I claim of $565,000 also is involved in the four Board cases, we find, as we did in Warwick Construction, that there is substantial overlap since the Board claims all are included in the omnibus claim before this court. Although, as in Warwick Construction, the plaintiff could not have filed in this court the four claims it filed with the Board, that is not a sufficient justification in the circumstances here to warrant having two tribunals initially determine these related claims. Furthermore, Board consideration of plaintiffs claims is not over. The fourth claim, GSBA No. 5090 (Spandrel Beams), has yet to be tried. Plaintiff estimates that it will take 3 days to present its side in that case, and the government expects to take the same amount of time. Parts of GSBA 4991 and 5010 have been remanded to the contracting officer for further consideration.
It is therefore necessary, in the interests of justice and expediency, to transfer the claims involved in this case to the Board.
C. Plaintiff suggests that instead of transferring this case, we stay proceedings here until the Board decides its four cases, so that "[a] single proceeding before the trial judge could then consider both the judicial review and direct access aspects of Plaintiffs claims.” In the light of the considerations set forth above, this would not be an appropriate procedure.
*586 It would be inappropriate for the further reason that in the direct access case the plaintiff would be entitled to a trial de novo before the Trial Division, whereas the court would review the Board decisions under the Wunderlich Act standard of determining whether the Board's decision was "fradulent [sic] or capricious or arbitrary or so grossly erroneous as necessarily to imply bad faith, or is not supported by substantial evidence.” 41 U.S.C. § 321 (1976).
Because of the substantial difficulty of consolidating cases involving different levels of review and the interest of judicial expediency in having all matters tried before the same tribunal when there is no sufficient reason for doing otherwise, we reject plaintiffs motion.
This case is transferrred to the General Services Administration Board of Contract Appeals under section 10(d) of the Act.

 The Senate Report provides the following example:
a contractor may have a large and complex claim and wish to take it directly to the Court of Claims. While this case is pending before the court, a smaller claim arises under the same contract, and possible [sic] the same suit, arises and the contractor wishes to expedite the resolution of that claim through the agency board under the same claims procedure or possibly the accelerated procedure, which would both be considerably shorter than direct action in court. Under these circumstances the court should allow for the splitting of the claim between the two jurisdictions (the court and the board).

 Although plaintiff, in its first amended petition stated that the Board "appeals concern the direct cost elements of four items in Plaintiffs impact and delay claim, but do not duplicate any of Plaintiffs claims for impact and delay [sic],” it concedes in its brief that "[w]hile there are a few common elements between the two groups of claims there are more disparities than not.”

 Paragraph 30 of plaintiffs petition in this court avers that: "The contract required the insulation to be glued directly to the wall but GSA changed this to require the insulation to be wedged between metal studs (GSBA No. 4991).” This claim is identical to GSBA No. 4991, see p. 580 supra, where plaintiff contended that it was "entitled to an equitable adjustment for any increase in the cost of, or the time required for, performing its contract because of the change in method of installing the four-inch foam-glass insulation.” (Emphasis added.) Both claims encompass time delays attributable to the foamglass insulation.

 Paragraph 16(c), 17, and 18 of plaintiffs petition in this court aver that "the contract drawings indicated a proposed storage area . . . but this area became unavailable for use . . . [and] further delayed and disrupted Plaintiffs operations.” This claim is identical to GSBA No. 4992, see p. 681 supra, where plaintiff sought an "equitable adjustment for the additional costs and time incurred in performing its work by reason of the differing site condition encountered with regard to the availability of storage space.” (Emphasis added.) Both claims encompass time delays attributable to the unavailability of the same storage space.

 Paragraph 27 of plaintiffs petition in this court avers that "[interfacing the stones with lips against the contract without a notch to receive the Up [contrary to structural drawings] delayed and disrupted Plaintiffs work.” This claim is identical to GSBA No. 5010, see p. 581 supra, where plaintiff sought an "equitable adjustment for the increased cost and time incurred by it as a result of the discrepancy between the . . . drawings.” (Emphasis added.) Both claims encompass the time delays attributable to a change in the limestone coping requirements.

 Paragraph 21 of plaintiffs petition in this court avers that "the concrete spandrel beams were poured out of alignment and that the Government’s shelf angle design failed to allow sufficient tolerance for proper placement of the stone . . . [which] further delayed and disrupted Plaintiffs work.” This clause is identical to GSBA No. 5090, see p. 581 supra, where plaintiff sought "an equitable adjustment for the added costs and time expended in performing its work which resulted from the fact that the spandrel beams were out of tolerance.” (Emphasis added.) Both claims encompass time delays attributable to defects in the spandrel beams.