**GUY ROBERTS LUMBER COMPANY**

v.

**The UNITED STATES.**

**No. 265–82.**

United States Claims Court.

April 5, 1984.

Lloyd W. Weisensee, Portland, Or., for plaintiff.

Richard F. Silber, Washington, D.C., with whom was Acting Asst. Atty. Gen. Richard K. Willard, David M. Cohen and Sandra P. Spooner, Washington, D.C., for defendant.

## ORDER

YOCK, Judge:

This case comes before the Court on the defendant's motion to transfer this action to the Agriculture Board of Contract Appeals (AGBCA or Board). The plaintiff has opposed the defendant's motion and has filed a motion to transfer to this Court, and to consolidate with this case, at least two of the four appeals which the plaintiff currently has pending before the AGBCA. After careful consideration of this matter, the Court has determined that it is in the interests of justice and the parties to transfer this case to the AGBCA.

### Facts

This case involves two United States Forest Service timber sale contracts on the Suislaw National Forest purchased by plaintiff. These two contracts are the Crab I timber sale contract No. 03289-2 ("Crab I") and the Upperten timber sale contract, No. 04209-2 ("Upperten"). Pursuant to these two contracts, plaintiff acquired the right to cut, remove and pay for all timber on the sale area. To simplify a rather confusing series of events, these contracts will be discussed separately.

### Crab I Timber Sale Contract

The Forest Service awarded the Crab I timber sale contract to the plaintiff on February 21, 1974. The original termination date of the contract was March 31, 1979. Due to adverse weather conditions, the termination date was extended by mutual agreement to May 12, 1979. Thereafter, the plaintiff and the Forest Service executed two additional agreements extending the term of the contract to an ultimate termination date of June 16, 1981. The plaintiff did not cut and remove any timber during the last extension of the contract. Nevertheless, on July 31, 1980, the plaintiff requested a further extension of the contract. The Forest Service denied this request on February 20, 1981. Thereafter, the contract expired on June 16, 1981.

The Forest Service issued three final decisions with regard to the Crab I contract. In a June 16, 1981 letter, Mr. Larry Fellows, the contracting officer, reaffirmed his decision of February 20, 1981 to refuse to grant any further extensions to or modifications of the contract. In a June 17, 1981 letter, Mr. Fellows informed the plaintiff that it had breached the contract by allowing it to expire in an uncompleted status. Thereafter, on October 27, 1981, the contracting officer notified the plaintiff that it was liable for damages in the amount of $95,316.12.

In a July 16, 1981 letter, the plaintiff informed the Forest Service of its desire to appeal Mr. Fellows' June 16 and June 17 decisions. On July 22, 1981, the Forest Service forwarded the plaintiff's notice of appeal to the AGBCA. The Board docketed these appeals as 81–240–5 and 81–241–5, respectively.[1] Thereafter, in a letter dated January 25, 1982, the plaintiff filed with the AGBCA a notice of appeal of the con-

---

1. These appeals were later redocketed by the Board as 81–240–1 and 81–241–1 in a letter to the parties dated June 1, 1982.

tracting officer's October 27, 1981 final damage determination of $95,316.12. This appeal was docketed as No. 82–161–1. On March 10, 1982, the plaintiff filed its complaint with the AGBCA.[2]

*Upperten Timber Sale Contract*

The Forest Service awarded the Upperten timber sale contract to the plaintiff on July 11, 1977. The original termination date of this contract was December 31, 1980. On December 23, 1980, the plaintiff and the Forest Service executed an agreement to extend the Upperten expiration date to December 31, 1981. Included in the agreement was a clause requiring the plaintiff to pay extension deposits over the extended term of the contract. The plaintiff subsequently failed to make the required April 30, 1981 extension deposit. In accordance with the terms of the modified contract, the Forest Service provided the plaintiff with thirty days to remedy its breach. The plaintiff failed to make the required deposit, however, and on June 30, 1981, the Forest Service issued a final decision that the Upperten contract was cancelled.

On October 26, 1981, the contracting officer mailed the plaintiff a final decision that the plaintiff was liable for damages of $101,285.70 as a result of its breach of the contract. In a letter to the AGBCA dated January 25, 1982, the plaintiff appealed the contracting officer's October 26, 1981 decision. The Board docketed this appeal as No. 82–160–1. Thereafter, on March 10, 1982, the plaintiff filed its complaint regarding this contract with the Board.

Thus the plaintiff presently has docketed before the AGBCA four appeals taken from the final decisions of the Forest Service contracting officer. Three appeals arise from the Crab I contract and have been docketed as AGBCA Nos. 81–240–1 (appealing refusal to grant further extensions); 81–241–1 (appealing determination that contract was breached); and 82–161–1 (appealing damage determination of $95,-316.12). The fourth appeal, docketed AGBCA No. 82–160–1, is from the contracting officer's decision that the plaintiff is liable for $101,285.70 as a result of its breach of the Upperten contract.

*Intervening Injunctive Action*

On August 28, 1981, after appealing the Forest Service's June 16 and 17, 1981 decisions to the Board, but before filing its January 25, 1982 notice of appeal of the damage determinations with the Board, the plaintiff filed an action in the Federal District Court for the District of Oregon seeking to restrain the Forest Service from reselling the Crab I and Upperten contracts. The district court denied the plaintiff's request for injunctive relief and ruled that damages would provide an appropriate remedy if the plaintiff ultimately prevailed on the merits.[3] Because the plaintiff's damage claim would exceed $10,000, the court concluded that jurisdiction properly lay in the Court of Claims. Accordingly, on May 18, 1982, the district court transferred the case to the Court of Claims. On June 17, 1982, the plaintiff filed its petition with the court. On August 3, 1982, the plaintiff filed its first amended petition, stating that its action was brought "to protect rights guaranteed to plaintiff by the Contract Disputes Act of 1978 * * *."

In its action before this Court, the plaintiff has sought, in essence: (1) a declaratory judgment that it is not liable for breach and damages on the Crab I contract; (2) a declaratory judgment that it is not liable for breach and damages on the Upperten contract; (3) a determination that both the Crab I and Upperten contracts were termi-

---

**2.** The complaint, filed under docket No. 81–240–5, apparently encompasses all three of the plaintiff's appeals relating to the Crab I contract.

**3.** The district court also ruled that the Forest Service could not preclude the plaintiff from bidding on the resale of the contracts. The plaintiff subsequently submitted the apparent high bids, but the Forest Service determined that it was not in the public interest to award the contracts to the plaintiff. Ultimately, the contracts were awarded to the second highest bidder, with the district court sustaining the decision of the Forest Service.

nated for the convenience of the government; (4) a money judgment of $65,689.78 in termination damages in plaintiff's favor on the Crab I contract; (5) a money judgment of $67,327.42 in termination damages in plaintiff's favor on the Upperten contract; and (6) a judgment of $600,000 in plaintiff's favor for unspecified "general damages and lost profits."

The defendant answered the plaintiff's amended petition and counterclaimed for $95,316.12 in money damages for the alleged breach by plaintiff of the Crab I contract, and for $101,285.70 in money damages for the alleged breach by plaintiff of the Upperten contract.[4]

## Discussion

The defendant seeks by motion to transfer and consolidate the case before this court with the four cases currently pending in the AGBCA. As authority the defendant relies on section 10(d) of the Contract Disputes Act of 1978, 41 U.S.C. § 609(d) (Supp. V 1981), which provides:

> If two or more suits arising from one contract are filed in the Court of Claims and one or more agency boards, for the convenience of the parties or witnesses or in the interest of justice, the Court of Claims may order the consolidation of such suits in that court or transfer any suits to or among the agency boards involved.

The defendant argues that the plaintiff's four claims before the AGBCA and those before this Court involve numerous overlapping issues which are best resolved in a single forum. The defendant notes that the plaintiff chose initially to bring its claims before the AGBCA, and that the plaintiff is in this Court only because the district court transferred the case to the Court of Claims after denying the plaintiff's application for injunctive relief. Accordingly, the defendant urges that the interests of justice and the convenience of the parties would be served by the transfer of this case to the Board.

The plaintiff opposes the defendant's motion for consolidation at the Board and instead seeks to transfer to this Court its appeals docketed before the Board as AGBCA Nos. 81–240–5 and 81–241–5.[5] Plaintiff questions this Court's "authority" to transfer the claims contained in the current Court case to the Board, and stresses that the Contract Disputes Act specially allowed for split claims under the same contract to be resolved in different forums. Also, the plaintiff is apparently concerned about the jurisdiction in the Board to resolve all of the claims involved.

▇▇ Whether an action filed in this Court should be transferred to an agency board is a discretionary act with the Court that embraces a variety of factors. It is generally an *ad hoc* determination. *E.D.S. Federal Corp. v. United States*, 1 Cl.Ct. 212, 214 (1983). The Court must, of course, be mindful of the admonitions in the legislative history of the Contract Disputes Act to the effect that claims should not be consolidated only for the sake of consolidation, and that the decision to consolidate should not arbitrarily take away the contractor's right to his day in court. S.Rep. No. 95–1118, 95th Cong., 2d Sess., *reprinted in* 1978 U.S.Code Cong. & Ad. News 5235, 5265; *see also Warwick Construction, Inc. v. United States*, 650 F.2d 289, 225 Ct.Cl. 567, 571 (1980). However, these admonitions are balanced by the language contained in the Act itself to the effect that consolidation will be appropriate

---

4. It should be noted at this point that defendant's counterclaims are in the exact amounts and are duplicates of the claims the Government asserted, and the plaintiff is appealing from, before the Board in AGBCA No. 82–160–1 and AGBCA No. 82–161–1.

5. Apparently the plaintiff refers to the Board appeals now docketed as 81–240–1 and 81–241–1. The plaintiff would leave before the Board its appeals of the Forest Service's damage determinations, docketed as AGBCA Nos. 82–160–1 and 82–161–1. It is also possible that plaintiff wants all four appeals currently docketed with the Board transferred and consolidated with the current Claims Court case. Plaintiff's intentions in this regard are simply not clear from his motion in opposition to defendant's consolidation motion.

where the interests of justice or convenience of the parties so dictate.

■ It is clear to this Court, after careful review of all the pleadings and papers, that defendant's motion for transfer is in the interests of justice and for the convenience of the parties, and therefore should be granted.

Defendant's central point in making the motion is that in both the appeals before the Board and in the action in this Court the issues overlap and are related. Central to the decision in all of the cases is the question of liability, *i.e.*, which party is responsible for the termination of the two timber contracts. Once liability is established, the damages have to be assessed. In determining these matters the deciding official(s) will be reviewing a multitude of agency materials and interpreting the various contract provisions at issue. This process should not be divided up between two different forums. That would be an inefficient use of judicial resources, as well as a duplication of effort on the part of the parties. *See Dravo-Groves v. United States*, Ct.Cl. No. 371–81C, slip op. at 3–4 (July 16, 1982). It also could lead to inconsistent results.

Most of the claims involved before both the Court and the Board are duplicate or mirror image claims. Such duplicate claims should be decided in one forum. *See David J. Tierney, Jr., Inc. v. United States*, 226 Ct.Cl. 686, 687–88 (1981). To the extent, however, that the claims are not duplicated or are not mirror image claims in both forums, they involve overlapping and related issues which still should be decided in one forum. *See Warwick Construction, Inc. v. United States, supra*, 225 Ct.Cl. at 571.

In addition to the above overriding factor, this Court also has noted the fact that considerable work has already been done

on the claims pending before the Board. The first two (of the claims) have been pending at the Board since July 1981, and considerable correspondence, pleadings and other work has already been accomplished. This is more than the "scintilla" of work the Court of Claims found significant in *Warwick Construction, Inc. v. United States, supra*, 225 Ct.Cl. at 571. Certainly more work has already been done at this point on the Board claims than has been done at the Court, which again would dictate that the matters be transferred to and consolidated at the Board.

It is also not without significance that the plaintiff initially chose to appeal its claims to the Board, and that there are currently pending at the Board four docketed appeals. In addition, the plaintiff itself recognizes the wisdom of consolidating all of these related claims in one forum, although it would opt to have the Board cases consolidated here.[6] Finally, it is clear that the Board would have jurisdiction over all the claims that this Court would have jurisdiction over and thus in view of the above discussion, all the claims should be consolidated at the Board. *See* Contract Disputes Act of 1978 § 8(d), 41 U.S.C. § 607(d) (Supp. V 1981).

For all of the above reasons, therefore, this Court concludes that the claims pending in this Court docket should be transferred to and consolidated with those claims pending before the Board.

IT IS THEREFORE ORDERED, upon consideration of the submissions of the parties, that the subject case with counterclaims be transferred to the AGBCA under the authority of 41 U.S.C. § 609(d) (Supp. V 1981), and consolidated with the following Board cases: AGBCA Nos. 81–240–1, 81–241–1, 82–160–1 and 82–161–1. Defendant's motion is granted in this regard.

---

6. Plaintiff appears to be concerned that the defendant may have lurking in the wings at the Board a jurisdictional defense to some of its claims. This may or may not be true, but is immaterial. To the extent that defendant may have valid jurisdictional defenses to some of the plaintiff's claims at the Board, those same defenses may be available to the defendant in this Court. Without knowing precisely what the plaintiff's concerns are, one hesitates to speculate. It is also the plaintiff's burden to make its concerns clear.

Plaintiff's motion to transfer to this Court appeals AGBCA Nos. 81–240–1 and 81–241–1 is likewise denied.