134

PRECISION PINE & TIMBER,
INC., Plaintiff,

v.

The UNITED STATES, Defendant.

No. 98–195 C.

United States Court of Federal Claims.

Oct. 7, 1999.

Alan I. Saltman, Washington, DC, counsel of record for plaintiff. Richard W. Goeken, Washington, DC, of counsel.

James C. Caine, Commercial Litigation Branch, Civil Division, U.S. Department of Justice, Washington, DC, for defendant, with whom were Kathryn A. Bleecker, Assistant Director; David M. Cohen, Director; and David W. Ogden, Acting Assistant Attorney General. Lori Polin Jones and Patricia Leigh Disert, U.S. Department of Agriculture, of counsel.

## OPINION AND ORDER

DAMICH, Judge.

May the same contract be litigated in two different fora? The parties are presently litigating the same contract before this Court and the Agricultural Board of Contract Appeals (AGBCA). Because each forum is hearing an independent controversy, this Court permits this procedure.

By filing a complaint at the Court of Federal Claims, Precision Pine & Timber, Inc. ("Precision Pine"), on September 11, 1998, instituted this proceeding. The amended complaint alleges that the government breached 14 contracts and that this breach caused a loss of more than $13 million. This complaint arose out of the decision of the Forest Service to suspend certain contracts in order to comply with the Endangered Species Act. This decision concerns one of the 14 suspended contracts, Contract No.

005937, which the parties call "the Salt Timber Sale" contract. Precision Pine asserts that the Forest Service's decision to suspend the 14 contracts was wrongful. The Contract Disputes Act (CDA), 41 U.S.C. § 609(a)(1), grants Precision Pine the right to appeal this decision to the Court of Federal Claims. At the Court of Federal Claims, Precision Pine seeks damages suffered as a result of the wrongful suspension.

On August 21, 1998, the Forest Service terminated the Salt Timber Sale contract for default because Precision Pine failed to submit a down payment that the contract required. In a final decision, dated April 15, 1999, the contract officer awarded $442,921.20 in damages to the United States. On April 21, 1999, Precision Pine appealed the final decision to the AGBCA. The Contract Dispute Act, 41 U.S.C. § 606, authorized Precision Pine's appeal to the appropriate board of contract appeals. The appeal is challenging the award of default damages against it and is not directly related to whether the Forest Service correctly determined that the Endangered Species Act required the suspension of the Salt Timber Contract.[1] Since the filing of the appeal, the parties have proceeded with litigation before the AGBCA.

On May 19, 1999, the Defendant filed an answer and counterclaim in this Court. The counterclaim alleged that Precision Pine was obligated to pay it $442,921.20.

Precision Pine filed a "motion to dismiss or [to] transfer counterclaims." As to the motion to dismiss, Precision Pine argues that this Court lacks subject-matter jurisdiction because the counterclaim is already being litigated before the AGBCA. As to the motion to transfer, Precision Pine asks that this Court exercise its discretion under the CDA, 41 U.S.C. § 609(d), to transfer the counterclaim to the Board.

In response, the United States filed an "opposition to the Plaintiff's motion to dismiss or [to] transfer counterclaim and [a] motion to consolidate." In regard to the motion to consolidate, the government asks that this Court exercise its discretion to transfer the AGBCA litigation to this Court.

**Motion to Dismiss for Lack of Subject–Matter Jurisdiction**

The parties' initial briefs raised a question as to whether this Court has subject-matter jurisdiction over the counterclaim. Consequently, the Court requested supplemental briefs on this issue and heard oral argument.

At oral argument, the United States conceded that the Court of Federal Claims lacked subject-matter jurisdiction over the counterclaim.[2] The United States made this concession based on *Sharman Co., Inc. v. United States*, 2 F.3d 1564 (Fed.Cir.1993), a case that was raised for the first time in Precision Pine's supplemental brief. Despite this concession, the United States argued that the Court of Federal Claims could "take" jurisdiction by transferring the pending appeal before the AGBCA to it.

Thus, the remaining question is where Precision Pine's challenge to the default termination, presently before the agency, will be litigated. The Court therefore must address the motion of the United States to transfer.[3]

**Motion to Transfer**

"If two or more suits arising from one contract are filed in the United States Court of Federal Claims and one or more agency boards, for the convenience of parties or witnesses or in the interest of justice, the United States Court of Federal Claims may order the consolidation of such suits in that court or transfer any suits to or among the agency boards involved." 41 U.S.C. § 609(d).

■ In considering whether to exercise its discretion to transfer, courts have considered several factors. Those factors are: (1) whether the same contract is involved; (2)

---

1. But see footnote 4, below, for the government's position.

2. Accordingly, Precision Pine's motion to dismiss the counterclaim is GRANTED.

3. The Court, strictly speaking, does not have to address the motion to transfer filed by Precision Pine. Precision Pine sought to transfer the counterclaim, which is now dismissed. There is nothing in Precision Pine's motion before this court to transfer. Accordingly, the motion to transfer of Precision Pine is denied as moot.

whether the cases present the same or overlapping issues; (3) whether the Plaintiff chose to proceed initially in the board or at the court; (4) whether substantial efforts have been expended in one forum, but not the other; and (5) whether transfer will eliminate duplication of efforts. See, *Blount, Inc. v. United States*, 15 Cl.Ct. 146, 148 (1988); see also, *Roubin & Janeiro, Inc. v. United States*, 652 F.2d 70, 227 Ct.Cl. 580 (1981); *David J. Tierney, Jr., Inc. v. United States*, 652 F.2d 69, 226 Ct.Cl. 686, 687 (1981).

■ After reviewing these factors, the Court finds that Precision Pine's lawsuit should be separated from the appeal. Accordingly, the United States' motion to transfer is denied. The Court's analysis of the five factors is set out below:

(1) *Whether the same contract is involved.* The Salt Timber Sale contract is just one of 14 contracts before the Court of Federal Claims. Thirteen contracts before this Court are not involved in the appeal at all. Interpreting the additional 13 contracts will needlessly distract from the consideration of the Salt Timber Sale contract.

(2) *Whether the same or similar issues are involved.* The lawsuit and the appeal have very different issues with little or no overlap.

The appeal concerns whether the contract officer correctly determined that Precision Pine is liable to the government for damages for a default. The specific contract clause at issue is CT9.4.

The Court of Federal Claims case involves whether the Forest Service complied with the Endangered Species Act. The United States has raised a CT6.25 "Protection of Habitat of Endangered Species," as a defense to this action. Further, the United States has also relied on CT6.01 "Interrup-

tion or Delay of Operations," as a clause limiting the amount of the damages available.

These issues are analytically distinct from the issue of default.[4] Because different contract clauses are involved, there is no risk of inconsistent interpretation by different fora. Each forum can reach a decision without concern that its decision will invade the province of the other forum.

(3) *Whether the Plaintiff chose to proceed initially in the court or board.* The Defendant argues that *Glendale Joint Venture v. United States*, 13 Cl.Ct. 325, 327 (1987), and *Multi–Roof Systems Co., Inc. v. U.S.*, 5 Cl. Ct. 245, 248 (1984), suggest that all proceedings should be in whichever forum the contractor originally selected. Indisputably, the earlier proceeding was at the Court of Federal Claims.

Although *Multi–Roof Systems* mentions the Plaintiff's initial choice of forum in the context of deciding *whether* to consolidate, this language should be understood as an analysis of *where* the cases should be consolidated. *Glendale Joint Venture* illustrates this point: "Consolidation of the Appeals" and "Choice of Forum" are two separate sections. *Glendale Joint Venture v. United States*, supra, 13 Cl.Ct. at 327. *Glendale Joint Venture* considers the Plaintiff's first choice of forum only after resolving that because of a substantial overlap of issues, the lawsuit and the agency appeal should be consolidated.

The approach implicitly taken by *Glendale Joint Venture* makes sense. When there is a dispute about consolidation under 41 U.S.C. § 609(d), the Plaintiff must first have filed a claim someplace. There does not seem to be any inherent reason that if the Plaintiff filed first at the board of contract appeals, then a lawsuit at the Court of Federal Claims should be consolidated. Likewise, there is no reason that if the Plaintiff filed first at the Court of Federal Claims, then an appeal

---

4. At oral argument, the United States speculated that at the AGBCA, Precision Pine could raise the question of whether the United States correctly suspended the contract to comply with the Salt Timber Contract, which is precisely the issue before the Court of Federal Claims. The United States articulated a theory that Precision Pine may claim that the improper suspension pre-

cludes a finding that Precision Pine defaulted on the Salt Timber Sale contract.

Presently, the record shows that Precision Pine has not introduced suspension into the proceedings before the AGBCA. The Court will not rest its decision on the conjecture that the cases may overlap sometime in the future.

before the agency should be consolidated. Instead, the Plaintiff's first choice of forum is relevant to deciding which forum will hear the case, *assuming* that consolidation is appropriate.

The legislative history of the 41 U.S.C. § 609 clearly states that consolidation is not always appropriate.

[T]he committees specifically recommend that the [Court of Federal Claims] be sensitive to the reasons why the suits have been split, and should not consolidate only for the sake of consolidation. For example, a contractor may have a large and complex claim and wish to take it directly to the [Court of Federal Claims]. While the case is pending before the court, a smaller claim under the same contract, and possibly the same suit, arises and the contractor wishes to expedite the resolution of that claim through the agency board under the small claims procedure or possibly the accelerated procedure, which would both be considerably shorter than direct action in court. Under these circumstances, the court should allow for the splitting of the claim between the two jurisdictions (the court and the board).

S.Rep. No. 95–1118 at 31, reprinted in 1978 U.S.C.C.A.N. 5235, 5265.

"If the complex claims were first filed in court and while the claims were pending before the court, simple claims arose under the same contract and the contractor wanted to utilize the accelerated procedure before the Board, splitting the claims between the two forums would be sanctioned." *E.D.S. Federal Corp. v. United States,* 1 Cl.Ct. 212, 214 n. 2 (1983).[5]

Here, the Court of Federal Claims has the more complex issue. The lawsuit involves 14 contracts and the government's obligations under the Endangered Species Act. In contrast, only one of the contracts was terminated and resolving this issue does not seem to involve any other statutes.

In addition, there is the separate element of timing. The lawsuit was filed before the contract officer issued a final decision on the termination issue. Precision Pine did not have to wait to file an action seeking damages for the suspension until the contract officer decided the default termination issue.

(4) *Whether substantial efforts have been expended in one forum, but not the other.*

From the parties' representations, it appears that litigation could be concluded on the appeal very soon. The parties have filed cross motions for summary judgment and briefing is scheduled to be completed in October, approximately six weeks from the date of this opinion. Of course, the filing of dispositive motions does not necessarily mean that the appeal will conclude. Nevertheless, there is a possibility that the case will be concluded in the immediate future.

In contrast, the case before the Court of Federal Claims appears to be significantly more lengthy. Although the parties have not proposed a discovery schedule, the court anticipates that this litigation will last at least one year. It would be unfair to the contractor to deny it quick resolution on its appeal by entangling it with this lawsuit.

(5) *Whether duplication of effort will be eliminated.* Whether consolidating the appeal with the lawsuit would reduce the amount of effort is difficult to assess.

The United States argues that the parties and the attorneys representing the parties would be inconvenienced by requiring duplicative discovery and case presentation. The Court is skeptical that litigation before *both* the Court of Federal Claims and the board of contract appeals would produce so much *extra* disruption. First, the United States is assuming that the board of contract appeals will deny both pending cross motions for summary judgment, including the motion filed by the government. Obviously, if either motion for summary judgment causes the appeal to be adjudicated completely, then no discovery is required whatsoever. Second, the appeal concerns two narrow issues (whether the default was proper and, if so, what is the measure of damages). Only a few people, including the contract officer for the Salt Timber Sale contract, will testify in that proceeding. In contrast, many people

---

**5.** The Court notes that although the quoted language is dicta, the reasoning remains persuasive.

will need to testify about the government's response to the Endangered Species Act and explain why 14 contracts were suspended. Therefore, the amount of repetition should be minimal.

The United States also points out that the government is represented by two different attorneys. At the Court of Federal Claims, a member of the Department of Justice represents the government. While at the board of contract appeals, an attorney from the Forest Service represents the agency. The United States points out that "it would be a waste of both parties' time for new defense attorneys to familiarize themselves with the suit." *Multi–Roof Systems Co., Inc.*, 5 Cl.Ct. 245, 248 (1984).

The potential extra work to the government attorneys is a lesser concern here. The same attorneys represent Precision Pine in both fora. The United States has chosen to assign two different attorneys. That choice is the prerogative of the United States, which this Court does not question. Having made that decision, the United States should not complain that now it should be relieved of the consequence of some duplication by its attorneys.

More importantly, the duplication of work by the attorneys seems rather small. The agency counsel has focused on the issue of the default termination and already filed one summary judgment brief on that issue. Presumably, the Department of Justice attorney has focused on the issue in the lawsuit: the suspension of the 14 contracts. If the appeal were removed from the agency, then the Department of Justice attorney would have to duplicate the efforts of agency counsel to learn about the default termination. In short, because the issues do not overlap, the work of the attorneys should also be separate.

Accordingly, considered as a whole, the five factors point toward separate resolution of the two issues. The "interest of justice" does not compel consolidating the appeal at the agency with the lawsuit in this court. In reaching this decision, the Court has interpreted the relevant cases cited by the parties.

The Court recognizes that its decision may be the first time that a court has sanctioned the "split" of a claim. According to the Defendant's argument, all other cases have consolidated the claims at the agency or consolidated the claims before the court. See, *Roubin & Janeiro, Inc. v. United States,* 652 F.2d 70, 227 Ct.Cl. 580 (1981) (board); *David J. Tierney, Jr., Inc. v. United States,* 652 F.2d 69, 226 Ct.Cl. 686, 687 (1981) (board); *Giuliani Contracting Co., Inc. v. United States,* 21 Cl.Ct. 81 (1990) (board); *Blount, Inc. v. United States,* 15 Cl.Ct. 146, 148 (1988) (board); *Glendale Joint Venture v. United States,* 13 Cl.Ct. 325 (1987) (court); *Multi–Roof Systems Co., Inc. v. United States,* 5 Cl.Ct. 245, 248 (1984) (board); *Guy Roberts Lumber Co. v. United States,* 5 Cl. Ct. 42 (1984) (board); *Space Age Engineering, Inc. v. United States,* 2 Cl.Ct. 164, 165 (1983) (board) and *E.D.S. Federal Corp. v. United States,* 1 Cl.Ct. 212, 214 (1983) (board). A close examination of all these cases shows that in every case the Court found a substantial overlap of the issues before the agency and the Court. In some cases, even the parties implicitly agreed that the cases should be consolidated; the only question was which forum was more appropriate. See, *Guy Roberts Lumber Co. v. United States,* supra, 5 Cl.Ct. 42 and *E.D.S. Federal Corp. v. United States,* supra, 1 Cl. Ct. 212.

This case is distinguishable from those cases. Here, the issues in the two proceedings involving Precision Pine are greatly different. Precision Pine presents a fact pattern that is unlike any other in these cases because Precision Pine has 14 contracts in the lawsuit, but a single contract in the appeal and because the lawsuit is much more complex than the appeal. Because these facts are "unprecedented," a new precedential opinion is warranted.

### CONCLUSION

Precision Pine's motion to dismiss the counterclaim is GRANTED and its motion to transfer the counterclaim is DENIED as moot.

The United States' motion to transfer the agency action is DENIED.

Within 10 days of this order, the Defendant shall file an amended answer eliminating the counterclaim.

Thereafter, the parties shall submit a Joint Preliminary Status Report within 45 days of the filing of the answer.