MORSE DIESEL INTERNATIONAL, INC., d/b/a AMEC Construction Management, Inc., Plaintiff,

v.

The UNITED STATES, Defendant.

Nos. 99–279C, 99–529C, 99–530C, 00–531C, 03–1537C.

United States Court of Federal Claims.

Feb. 1, 2006.

MEMORANDUM OPINION AND ORDER REGARDING THE GOVERNMENT'S SEPTEMBER 6, 2005 MOTION TO TRANSFER AND CONSOLIDATE AND PLAINTIFF'S JANUARY 9, 2006 MOTION FOR DISCOVERY

BRADEN, Judge.

## RELEVANT FACTUAL BACKGROUND

A complete statement of the factual background relevant to this Memorandum Opinion is set forth in *Morse Diesel Int'l, Inc. v. United States,* 66 Fed.Cl. 788, 789–93 (Fed. Cl.2005) (*"Morse Diesel I"*). In brief, Morse Diesel International, Inc. ("MDI")[1] is a construction management firm that contracted for work on three United States federal buildings that are now the subject of lawsuits filed in the United States Court of Federal Claims and the General Services Board of Contracting Appeals ("GSBCA"). For reasons discussed herein, the court has determined, pursuant to 41 U.S.C. § 609(d), that the nine actions pending before the GSBCA should be transferred to the United States Court of Federal Claims for adjudication and entry of a Final Judgment.

### A. The St. Louis Phase I And Phase II Contracts.

On July 15, 1994, the General Services Administration ("GSA") awarded MDI Contract No. GS06P94GYC0037 ("Phase I of the St. Louis Contract"), requiring MDI to excavate a building site and construct a foundation and core wall for the Thomas F. Eagleton Federal Courthouse in St. Louis, Missouri. *See Morse Diesel I,* 66 Fed.Cl. at 791. Phase I of the St. Louis Contract had a fixed price of $20,343,186.00. *Id.* On September 29, 1995, GSA awarded MDI another Contract No. GS06P95GZC0501 ("Phase II of the St. Louis Contract"), requiring MDI to complete the construction of the Thomas F. Eagleton Federal Courthouse. *Id.* Phase II of the St. Louis Contract had a fixed price of $165,102,792.00 and an option

James D. Wareham, Paul, Hastings, Janofsky & Walker, Washington, D.C., counsel for Plaintiff.

Domenique Grace Kirchner, United States Department of Justice, Washington, D.C., counsel for Defendant.

1. In January 2001, MDI, a Delaware corporation wholly owned by AMEC plc, through its subsidiary AMEC Holding, Inc., was renamed AMEC Construction Management, Inc. ("AMEC"). *See Morse Diesel I,* 66 Fed.Cl. at 789. On or about March 11, 2004, MDI was sold by AMEC plc to Facchina–McGaughan LLC, but MDI continues to do business under the MDI and AMEC names. *Id.* Therefore, for actions undertaken after January 2001, Plaintiff is referred to as MDI/AMEC.

for a build-out with a separate price of $1,900,000.00. *Id.*

## B. The San Francisco And Sacramento Contracts.

On February 15, 1995, GSA awarded MDI Contract No. GS09P95KTC0010 to conduct seismic and electrical upgrades at the United States Customs House in San Francisco for a fixed price of $12,220,188.00 ("San Francisco Contract"). *Id.* at 792.

On July 19, 1995, GSA also awarded MDI Contract No. GS09P95KTC0032 to construct the core and shell of the United States Courthouse and Federal Building in Sacramento for a fixed price of $92,609,000.00 ("Sacramento Contract"). *Id.*

## PROCEDURAL HISTORY

### A. In The United States Court Of Federal Claims.

On May 5, 1999, MDI filed a Complaint in the United States Court of Federal Claims, Case No. 99–279C, alleging a breach of Phase II of the St. Louis Contract. *Id.* at 793. On July 29, 1999, MDI also filed Case No. 99–529C in the United States Court of Federal Claims seeking a declaratory judgment and conversion of the default termination of Phase II of the St. Louis Contract to a termination of convenience. *Morse Diesel Int'l, Inc. v. United States,* 66 Fed.Cl. 801, 803 n. 1 (Fed.Cl.2005) ("*Morse Diesel II*"). On July 29, 1999, MDI filed Case No. 99–530C in the United States Court of Federal Claims seeking reimbursement of certain costs arising from Phase II of the St. Louis Contract. *Id.* On September 1, 2000, MDI filed Case No. 00–531C in the United States Court of Federal Claims seeking reimbursement of certain costs arising from Phase II of the St. Louis Contract. *Id.* On June 20, 2003, MDI filed Case No. 03–1537C

seeking review of a GSA contracting officer's denial of a claim arising from Phase II of the St. Louis Contract. *Id.* On July 18, 2003, each of the aforementioned related cases were consolidated with the Case No. 99–279C. *See Morse Diesel I,* 66 Fed.Cl. at 794–95.

On February 20, 2004, the court heard oral argument on all pending dispositive motions. On July 15, 2005, the court issued a Memorandum Opinion granting the ·Government's December 7, 2001 Motion for Partial Summary Judgment Regarding the Seventh Counterclaim against MDI for violating Anti–Kickback Act of 1986, 41 U.S.C. §§ 51–58. *See Morse Diesel I,* 66 Fed.Cl. at 801. The court has not yet adjudicated the other bases for the Government's April 29, 2003 Motion for Partial Summary Judgment.

On July 15, 2005, the court also issued a Memorandum Opinion and Order transferring GSBCA No. 16503 to the United States Court of Federal Claims. *See Morse Diesel II,* 66 Fed.Cl. at 806.[2] On July 26, 2005, the GSBCA issued an Order dismissing GSBCA No. 16503, without prejudice, and transferring the case to the United States Court of Federal Claims, pursuant to the July 15, 2005 Order in *Morse Diesel II.*

On August 16, 2005, the Government filed a Fourth Amended Counterclaim against MDI/AMEC in Case No. 99–279C, as consolidated to date, wherein nine counterclaims were asserted alleging violations of: the False Claims Act, 31 U.S.C. § 3729(a)(1), (a)(2); the Forfeiture of Fraudulent Claims Act, 28 U.S.C. § 2514; the Anti–Kickback Act of 1986, 41 U.S.C. §§ 53, 55(a)(1)(A) and (B);[3] and the Contract Disputes Act, 41 U.S.C. § 604. *See* 4th Amend. Countercl. ¶¶ 131–175. The Government also alleged common law counterclaims for: restitution; payment under mistake of fact; breach of

---

2. To the extent that the Government's December 7, 2001 Motion for Partial Summary Judgment on Liability alleges that certain kickback activities violated the False Claims Act and/or breached Phase I and Phase II of the St. Louis Contract, as well as the Sacramento and San Francisco Contracts, and such allegations are not subsumed by the Government's April 29, 2003 Motion, those allegations also will require adjudication.

3. The court's July 15, 2005 Memorandum Decision in *Morse Diesel I* adjudicated the Government's Seventh Counterclaim under the Anti–Kickback Act of 1986, however, a final order needs to be entered regarding liability and the amount of recovery to which the Government is entitled.

contract; and fraud. *Id.* The Government's counterclaims, however, are not limited only to Phase II of the St. Louis Contract, but also concern MDI's conduct on Phase I of the St. Louis Contract, as well as the Sacramento and San Francisco Contracts. *Id.*

On September 9, 2005, the Government filed a Motion to Transfer and Consolidate the nine remaining actions still pending before the GSBCA concerning claims arising from Phase I and Phase II of the St. Louis Contract, together with an Appendix ("Gov't App."). On September 20, 2005, MDI/AMEC filed a Response opposing transfer and consolidation ("Pl.Resp."). Although MDI/AMEC does not oppose the transfer of three GSBCA actions involving Phase II of the St. Louis Contract, however, MDI/AMEC opposes the transfer of the six GSBCA actions concerning claims arising from Phase I of the St. Louis Contract. *See* Pl. Resp. at 1. MDI/AMEC's opposition to the transfer of the actions concerning claims arising from Phase I of the St. Louis Contract essentially replicates MDI/AMEC's prior opposition to the transfer of GSBCA No. 16503. *Compare id. with Morse Diesel II.* Specifically, MDI/AMEC argues that the United States Court of Federal Claims does not have jurisdiction to transfer the Phase I of the St. Louis Contract actions, because a "suit" does not include counterclaim, within the meaning of 41 U.S.C. § 609(d). Therefore, the jurisdictional prerequisite for transfer of "two or more suits arising from one contract" is not satisfied. *See* Pl. Resp. at 4. In addition, MDI/AMEC argues that, even if the United States Court of Federal Claims has jurisdiction to transfer the GSBCA actions at issue, the relevant legal factors weigh against transfer. *Id.* at 8. As a matter

of law, the underlying claims cannot be forfeited based on the Government's counterclaims for fraud and, thus, there are no overlapping issues, possible duplication of efforts, or potentially conflicting decisions. *Id.* at 9–10, 11–16. MDI/AMEC also asserts that the initial choice of forum was at the GSBCA and that "substantial discovery" has taken place. *Id.* at 10. On September 30, 2005, the Government filed a Reply.

On November 24, 2005, MDI/AMEC filed a Petition for Writ of Mandamus with the United States Court of Appeals for the Federal Circuit to prohibit the court from accepting the July 26, 2005 transfer of GSBCA No. 16503, caused by the court's July 15, 2005 Order in *Morse Diesel II*, and to preclude the court from entering an order transferring other cases from the GSBCA, as the Government's September 9, 2005 Motion urges. At the request of MDI/AMEC, the court held an oral argument on November 8, 2005, at which time MDI/AMEC requested that the court not rule on the Government's September 9, 2005 Motion until the United States Court of Appeals for the Federal Circuit ruled on MDI/AMEC's Petition.

On January 9, 2006, the United States Court of Appeals for the Federal Circuit denied MDI/AMEC's Petition. *See In re Morse Diesel Int'l, Inc.*, No. 808, 2006 WL 171763, 2006 U.S.App. LEXIS 1678 (Fed.Cir. Jan. 9, 2006).

**B. In The General Services Board Of Contracting Appeals.**

At present, GSBCA has nine pending actions that were filed by MDI or MDI/AMEC: six concern Phase I of the St. Louis Contract; [4] the other three concern Phase II of

---

4. On December 11, 1995, MDI filed GSBCA No. 13486, a pass through claim of T.J. Ahrens, Inc., a MDI subcontractor, requesting $91,7000.00 for costs arising from additional test pits dug by MDI to determine the extent of special waste within the site for the Phase I of the St. Louis Contract. *See* Gov't App. at A–5. On January 4, 2005, the GSBCA stayed proceedings until December 31, 2005, because of actions taken by the United States Court of Federal Claims. *Id.* at A–13, 15.

On December 14, 1995, MDI filed GSBCA No. 13491 requesting $90,758.00 for the removal of unexpected rock during excavation for the Phase

I Contract. *Id.* at A–17–29. On January 4, 2005, the GSBCA stayed proceedings until December 31, 2005, because of actions taken by the United States Court of Federal Claims. *Id.* at A–25, 26.

On December 14, 1995, MDI filed GSBCA No. 13492 requesting $90,758.00 for the removal of "obstructions" found at the Phase I of the St. Louis Contract site. *Id.* at A–30–41. On January 4, 2005, the GSBCA stayed proceedings until December 31, 2005, because of actions taken by the United States Court of Federal Claims. *Id.* at A–49–50.

On October 30, 1997, MDI filed GSBCA No. 14372 requesting $13,329,355.00 in connection

the St. Louis Contract.[5]

In November 1999, the GSBCA suspended proceedings in GSBCA Nos. 14755, 14893, and 15102, the three actions concerning claims arising from Phase II of the St. Louis Contract, because of civil fraud counterclaims filed by the Government against MDI in this case. *See* Gov't App. at A–290–96, 303–06, 308–17, 320–23. A stay also was entered by the GSBCA on January 4, 2005 in all the nine pending actions initiated by MDI/AMEC that was in place until December 31, 2005. *See supra* notes 3 & 4.

## DISCUSSION

### A. Jurisdiction.

The United States Court of Federal Claims has jurisdiction under the Tucker Act to adjudicate any claims by or against, or dispute with, a contractor arising under § 10(a)(1) of the Contract Disputes Act of 1978, "including a dispute concerning termination of a contract, rights in tangible or intangible property, compliance with cost accounting standards, and other nonmonetary disputes on which a decision of the contracting officer has been issued under section 6 of that Act." 28 U.S.C. § 1491. *See Alliant Techsystems, Inc. v. United States,* 178 F.3d 1260, 1270 (Fed.Cir.1999) (holding that "the Tucker Act grants the United States Court of Federal Claims jurisdiction to grant nonmonetary relief in connection with contractor claims, including claims requesting an interpretation of contract terms.").

Specifically, regarding jurisdiction to transfer and consolidate claims pending before agency Boards of Contract Appeals, the Contract Disputes Act requires:

---

with Phase I of the St. Louis Contract, including $7,978,398.00 arising from pass through claims of the following MDI subcontractors: Rodio–ICOS ($6,618,314.00); T.J. Ahrens, Inc. ($700,-000.00); Concrete Construction Co. ("CECO") ($193,048.00); Ahal Contracting Co. ($191,-371.00); Guarantee Electrical Co. ($97,871.00); Peter L. DeLuca Plumbing Co. ($237,593.00); and Hausman Corp. of Indianapolis ($209,-097.00). *Id.* at A–42–102. On January 4, 2005, the GSBCA stayed proceedings until December 31, 2005, because of actions taken in the United States Court of Federal Claims. *Id.* at A–47, 48.

On December 11, 1997, the GSBCA consolidated GSBCA Nos. 13486, 13491, 13492, and 14372. *Id.* at A–6, 291.

On December 4, 1998, MDI filed a Complaint in the United States Court of Federal Claims as Case No. 98–908, wherein MDI challenged a June 18, 1998 GSA contracting officer's decision to deny MDI's claim alleging Government misrepresentations about the presence of hazardous lead material at the Phase I of the St. Louis Contract site, negligent inspection of the site, and mutual mistake of fact. On October 27, 1999, the Honorable James F. Merow, now a Senior Judge of the United States Court of Federal Claims, transferred Case No. 98–908 to the GSBCA, because the monetary relief requested was subject to GSBCA No. 14372 and both actions involved directly related issues, witnesses, and documents. *Id.* at A–193–272. That case was docketed as GSBCA No. 15658 on November 9, 1999. *Id.* at A–193. On January 4, 2005, the GSBCA stayed proceedings until December 31, 2005, because of actions taken in the United States Court of Federal Claims. *Id.* at A–197.

On May 3, 2000, MDI/AMEC filed GSBCA No. 15312, concerning a negligent site inspection and mutual mistake of fact action relating to Phase I of the St. Louis Contract, similar to the action filed as GSBCA No. 15158. .*Id.* at A–283–86. On January 4, 2005, the GSBCA stayed proceedings until December 31, 2005, because of actions taken in the United States Court of Federal Claims. *Id.* at A–286.

5. On November 16, 1998, MDI filed GSBCA No. 14755, a pass through claim filed on behalf of MDI subcontractor Sachs Electric, regarding a request for a change in the high rise factor for electrical distributions for the Phase II of the St. Louis Contract. *Id.* at A–142–54. On January 4, 2005, the GSBCA stayed proceedings until December 31, 2005, because of actions taken in the United States Court of Federal Claims. *Id.* at A–148.

On February 3, 1999, MDI filed GSBCA No. 14893, a pass through claim filed on behalf of MDI subcontractor Montgomery KONE for additional costs incurred for elevator beam pocket configurations and steel support beam installation in connection with Phase II of the St. Louis Contract. *Id.* at A–159–83. On January 4, 2005, the GSBCA stayed proceedings until December 31, 2005, because of actions taken in the United States Court of Federal Claims. *Id.* at A–188.

On May 12, 1999, MDI filed GSBCA No. 15102, a pass through claim filed on behalf of MDI subcontractor Sachs Electric for additional costs incurred for conduit labels and pull strings for Phase II of the St. Louis Contract. *Id.* at A–184–92. On January 4, 2005, the GSBCA stayed proceedings until December 31, 2005, because of actions taken in the United States Court of Federal Claims. *Id.* at A–189.

If two or more suits arising from one contract are filed in the United States Claims Court and one or more agency boards, for the convenience of parties or witnesses or *in the interest of justice,* the United States Claims Court may order the consolidation of such suits in that court or transfer any suits to or among the agency boards involved.

41 U.S.C. § 609(d) (emphasis added).

### B. Standing.

Pursuant to the Tucker Act, 28 U.S.C. § 1491(a), and the Contract Disputes Act, 41 U.S.C. § 609(d), MDI, MDI/AMEC, and the Government have standing to bring an action or counterclaim in the United States Court of Federal Claims, because both are parties and/or successors-in-interest to the Phase I and Phase II of the St. Louis Contracts, as well as the Sacramento and San Francisco Contracts.

### C. Standard For Decision–Transfer And Consolidation.

■ The United States Court of Appeals for the Federal Circuit has held that the United States Court of Federal Claims has "broad discretion" to transfer and consolidate a suit from the GSBCA, pursuant to 41 U.S.C. § 609(d). *See Joseph Morton Co. v. United States,* 757 F.2d 1273, 1280 (Fed.Cir. 1985). Among the factors that the court should consider in deciding whether to transfer and consolidate are whether: 1) the dispute before the board and the court concern the same contract; 2) the claims before the board and the court have overlapping and related issues; 3) plaintiff initially chose to assert claims before a board or a court; 4) one forum has made significant progress on the claims; 5) concurrent resolution would result in an inefficient allocation of the court's, board's, or parties' resources; and 6) different forums would reach inconsistent results. *See Giuliani Contracting Co. v. United States,* 21 Cl.Ct. 81, 83 (Cl.Ct.1990) (Rader, J.).

### D. The Court's Resolution Of The Government's September 6, 2005 Motion To Transfer GSBCA Nos. 13491, 13492, 13486, 14372, 14755, 14893, 15102, 15158, And 15312 To The United States Court Of Federal Claims And Consolidate.

#### 1. The United States Court Of Federal Claims Has Jurisdiction Over "Two Or More Suits Arising From One Contract" And The General Services Board Of Contracting Appeals Has Jurisdiction Over Actions Concerning The Same Contract.

■ In order to transfer the GSBCA actions filed by MDI/AMEC arising from Phase I and Phase II of the St. Louis Contract, there must be "two or more suits arising from one contract," filed in the United States Court of Federal Claims and the GSBCA. *See* 41 U.S.C. § 609(d).

■ The United States Court of Federal Claims has jurisdiction over consolidated Case Nos. 99–279C, 99–529C, 99–530C, 00–530C, and 03–1537C, wherein the Government has asserted counterclaims against MDI regarding Phase I of the St. Louis Contract (No.GS06P94GYC0037). The GSBCA also has jurisdiction over GSBCA Nos. 13486, 13491, 13492, 14372, 15158, and 15312 that concern claims arising from Phase I of the St. Louis Contract. Although the Contract Disputes Act does not define "suit," the plain language of that statute does not exclude a counterclaim from the broader context of the meaning of the term "suit." *See Black's Law Dictionary* (8th ed.2004) (defining "suit" as "any proceeding by a party or parties against another in a court of law."). Accordingly, Congress used the term "suit" in another portion of the statute that specifically references counterclaims: "In any suit filed pursuant to this chapter involving two or more claims, counterclaims, cross-claims, or third-party claims." *See* 41 U.S.C. § 609(e). The court has determined that the term "suit" in 41 U.S.C. § 609(a) includes a "counterclaim." This construction previously has been adopted by the United States Court of Federal Claims, without challenge, and has been adopted by the United States Court of Appeals for the Federal Circuit in an analogous context. *See Glendale Joint Venture v.*

*United States,* 13 Cl.Ct. 325 (Cl.Ct.1987) (transferring and consolidating under the Contract Disputes Act a case based on a Government counterclaim); *cf. Frantz Equipment Co. v. United States,* 120 Ct.Cl. 312, 98 F.Supp. 579 (Ct.Cl.1951) (holding that a counterclaim constitutes a "suit" under 28 U.S.C. § 1500). Therefore, the court has determined that it has jurisdiction over "two ore more suits arising from one contract," *i.e.,* Phase I of the St. Louis Contract. *See* 41 U.S.C. § 609(d).

■ In addition, the United States Court of Federal Claims has jurisdiction over Case Nos. 99–279C, 99–529C, 99–530C, 00–530C, and 03–1537C, as consolidated, wherein MDI or MDI/AMEC asserted claims against the Government regarding the Phase II of the St. Louis Contract (No.GS06P95GZC0501). The GSBCA has jurisdiction over GSBCA Nos. 14755, 14893, and 15102 that also concern claims arising from Phase II of the St. Louis Contract. Therefore, the United States Court of Federal Claims has jurisdiction over "two or more suits arising from one contract," *i.e.,* Phase II of the St. Louis Contract. *See* 41 U.S.C. § 609(d).

**2. Case Pending Before The United States Court Of Federal Claims And Actions Before The General Services Board of Contract Appeals Share Related Issues.**

■ The cases pending before the United States Court of Federal Claims and actions before the GSBCA share related issues. For example, the Government's counterclaims assert that MDI committed fraud in performance of the Phase I of the St. Louis Contract, which is related to claims asserted by MDI in the above-referenced GSBCA actions regarding Phase I of the St. Louis Contract. *See* 4th Amend. Countercl. ¶¶ 45–47, 50–5. Adjudication of the Government's counterclaim asserting that MDI engaged in fraud necessarily will affect the viability of MDI/AMEC's claims in the United States Court of Federal Claims regarding Phase I and Phase II of the St. Louis Contract, as well as the San Francisco and Sacramento Contracts, as well as MDI's GSBCA actions. *See* 4th Amend. Countercl. ¶¶ 45–47, 50–51.

**3. Plaintiff First Filed Actions In The General Services Board of Contract Appeals.**

MDI filed six actions at the GSBCA for claims arising from Phase I of the St. Louis Contract, beginning on December 11, 1995. MDI first filed a case in the United States Court of Federal Claims on May 5, 1999. *See Morse Diesel I,* 66 Fed.Cl. at 793. MDI/AMEC, however, filed subsequent cases in the United States Court of Federal Claims, as well as actions in the GSBCA. Therefore, the record does not evidence that MDI/AMEC has not expressed an exclusive preference for one forum over another.

**4. The United States Court Of Federal Claims Has Made Significant Progress In The Adjudication Of MDI/AMEC's Pending Cases.**

The United States Court of Federal Claims has made significant progress in the adjudication of MDI/AMEC's pending cases. *See Morse Diesel II,* 66 Fed.Cl. at 805–06. The Government's April 29, 2003 Motion for Partial Summary Judgment on counterclaims concerning Phase I and Phase II of the St. Louis Contract, as well as the Sacramento and San Francisco Contracts, are fully briefed and ripe for adjudication and entry of a final judgment. MDI actions filed at the GSBCA, however, have been stayed since 1999 and the most recent stay, entered on January 4, 2005, suggests that the actions before the GSBCA will continue to be stayed, until the cases filed in the United States Court of Federal Claim are fully adjudicated. *See supra* notes 3 & 4.

**5. Concurrent Resolution Would Result In An Inefficient Allocation Of Resources.**

Since the cases filed in the United States Court of Federal Claims and the actions filed before the General Services Board of Contract Appeals are related, to permit them to be resolved in two different forums necessarily requires a duplication of efforts by the parties and an inefficient allocation of judicial resources. *See Morse Diesel II,* 66 Fed.Cl. at 806.

### 6. Separate Forums Could Reach Inconsistent Results.

It is possible that the United States Court of Federal Claims and the General Services Board of Contract Appeals could reach inconsistent results regarding common legal issues. Transfer to the United States Court of Federal Claims, however, would assure a uniform adjudication. *See Morse Diesel II*, 66 Fed.Cl. at 806.

### 7. Transfer Serves The Convenience Of The Parties, Witnesses, And Interests Of Justice.

Transfer would be convenient for the parties and witnesses, because the related legal issues can be litigated in one forum, instead of two. Transfer also would serve the interests of justice in promoting judicial economy. In addition, on February 1, 2006, the Honorable Martha H. DeGraff of General Services Board of Contract Appeals advised the Clerk of the United States Court of Federal Claims of her consent to the transfer GSBCA Nos. 13486, 13491, 13492, 14372, 15158, and 15312 from the GSBCA to the United States Court of Federal Claims.

### 8. Consolidation Is Premature.

When GSBCA Nos. 13486, 13491, 13492, 14372, 14755, 14893, 15102, 15158, and 15312 are transferred to the Clerk of the United States Court of Federal Claims and each action is assigned a docket number, the court then will consider the Government's September 6, 2005 Motion to Consolidate, pursuant to RCFC 42.1. Until that time, however, consolidation is premature. The court intends to issue one order consolidating each of the above referenced GSBCA cases and GSBCA No. 16503 that was transferred on July 27, 2005 to the United States Court of Federal Claims, pursuant to the Order issued on July 15, 2005 in *Morse Diesel II*.

### E. The Court's Resolution Of Plaintiff's January 12, 2006 Motion For Discovery.

On January 12, 2006, MDI/AMEC filed a Motion for Discovery asserting that "This case has been pending for six years and discovery is long overdue. To date, MDI has not been permitted to conduct any discovery on its claims." *See* MDI/AMEC Mot. at 1. As the Government's January 30, 2006 Opposition points out, MDI/AMEC agreed to conduct discovery of the Government's counterclaims in this case first. *See* Gov't Opp. at 7 (citing March 23, 2000 and May 22, 2000 Parties' Joint Status Report and Proposed Litigation Schedule entered in Case No. 99–279C and December 21, 2001 Parties' Joint Status Report and Motion for Enlargement of Discovery).

As discussed herein, on July 18, 2003, Case No. 99–279C, was consolidated with four other related cases pending in the United States Court of Federal Claims. On August 15, 2003, Case No. 99–279C, as consolidated, was transferred from the Honorable Loren A. Smith, Senior Judge, to the undersigned. On February 20, 2004, the court heard oral argument on all pending dispositive motions. On March 11, 2004, the Government moved to stay discovery in all cases and for a protective order, pending disposition of the Government's April 29, 2003 Motion for Partial Summary Judgment. On April 23, 2004, the court convened a telephone status conference at which counsel for MDI/AMEC opposed the Government's March 11, 2004 Motion. In addition, the location and security of certain discovery subject to MDI/AMEC's February 6, 2004 document request was discussed and the Government assured the court that proper measures had been taken to ensure the integrity of this evidence. *Id.* Therefore, the court did not grant the Government's motion to stay discovery or grant other relief requested. *See Morse Diesel, Inc. v. United States*, No. 99–279C (Fed.Cl. Apr. 28, 2004) (Order postponing a ruling on the Motion to Stay Discovery, until final resolution of the Government's April 29, 2003 Motion for Partial Summary Judgment). Accordingly, MDI/AMEC has not been subject to any order of the court denying discovery as to any claims in this case. The fact that MDI/AMEC concurred in a discovery schedule proposed by the Government and did not pursue any independent discovery was a strategic judgment made by MDI/AMEC's

**566**

former counsel.[6]

The court now has resolved all pending motions concerning the transfer of related actions before GSBCA to the United States Court of Federal Claims. Assuming MDI/AMEC files no other motions in the interim, the court intends to issue an Order of Consolidation on February 28, 2006. In addition, the court intends to issue a Memorandum Opinion and Order adjudicating the remaining issues in the Government's April 29, 2003 Motion for Partial Summary Judgment on April 28, 2006, as well as an Order in *Morse Diesel I*. Until such time, all parties are stayed from conducting any further discovery. *See* RCFC 26(c). After the aforementioned Orders are entered, the court will convene a conference with the parties to ascertain what additional discovery, if any, is required by either party.

### CONCLUSION

For these reasons, the Government's motion to transfer GSBCA Nos. 13486, 13491, 13492, 14372, 14755, 14893, 15102, 15158, and 15312 to the United States Court of Federal Claims, pursuant to 41 U.S.C. § 609(d), is hereby **GRANTED**. When the Clerk of the United States Court of Federal Claims assigns a docket number to these cases, the Clerk is **DIRECTED** to notify the court, so that an Order may be issued to consolidate these cases and GSBCA No. 16503, now Case No. 05–804C, with Case Nos. 99–279C, 99–529C, 99–530C, 00–530C, and 03–1537C.

**IT IS SO ORDERED.**