**ROCKWELL AUTOMATION, INC., Plaintiff,**

v.

**UNITED STATES, Defendant.**

No. 91–1362C.

United States Court of Federal Claims.

March 10, 2006.

John A. Kolar, Attorney, Commercial Litigation Branch, Civil Division, United States Department of Justice, Washington, D.C., for defendant. With him on the briefs were Peter D. Keisler, Assistant Attorney General, David M. Cohen, Director, James M. Kinsella, Deputy Director, and Joel D. Hesch and Donald Williamson, Attorneys, Commercial Litigation Branch, Washington, D.C.

## OPINION AND ORDER

LETTOW, Judge.

This case presents a complex set of questions arising from a cost-reimbursement contract between plaintiff, Rockwell Automation, Inc. ("Rockwell") and the U.S. Department of Energy ("DOE"), providing that Rockwell would manage and operate the Rocky Flats Nuclear Weapons Plant ("Rocky Flats") in Colorado, under the overall supervision of officials of DOE. The term of the contract extended from June 30, 1975 to December 31, 1989.

In simplistic terms, this case focuses on Rockwell's entitlement to so-called "award fees" for two six-month periods comprising the federal government's 1989 fiscal year, *i.e.*, running from October 1, 1988 through September 30, 1989. Compl. ¶¶ 32–33, 36–37. However, the issues associated with those fees are embedded in a matrix of claims and counterclaims stemming from a criminal investigation into Rockwell's operation of Rocky Flats. That investigation first took public form with service of a search warrant at Rocky Flats on June 6, 1989 by numerous federal agents who were seeking evidence of environmental crimes, followed by extensive public commentary and controversy. Although that initial investigation never produced criminal charges, Rockwell eventually faced new and different allegations of violations of environmental regulatory requirements. *See Abraham v. Rockwell Int'l Corp.*, 326 F.3d 1242, 1245–46 (Fed.Cir.2003) (affirming an award by the Department of Energy Board of Contract Appeals to Rockwell of costs and expenses incurred in defending the criminal investigation that produced no charges). Pursuant to a plea agreement dated March 26, 1992, Rockwell

Richard J. Ney, Chadbourne & Parke LLP, Los Angeles, California, for plaintiff.

pled guilty to felony and misdemeanor violations of two environmental regulatory statutes, and consequently a fine of $18.5 million was imposed. *Id.*

In 1989, relatively soon after execution of the search warrant at Rocky Flats, a relator brought a *qui tam* action against Rockwell under the False Claims Act ("FCA"), 31 U.S.C. § 3730. *See United States ex rel. Stone v. Rockwell Int'l Corp.*, Civil Action No. 89–1154 (D. Colo. filed July 5, 1989). That action proceeded slowly until approximately six years later, in November 1995, when the United States moved to intervene to pursue some, but not all, of the relator's claims.[1] The United States was granted intervention a year later, in November 1996. *See United States ex rel. Stone v. Rockwell Int'l Corp.*, 282 F.3d 787, 793–95 (10th Cir. 2002) (affirming a jury's verdict and the district court's ensuing judgment in the *qui tam* action, on appeal and cross-appeals). In that action, claims by the government under the False Claims Act as well as claims of breach of contract and common law fraud were tried to a jury. Although Rockwell prevailed on most of those claims, judgment was entered on the jury's verdict in favor of the government on three specific alleged violations of the False Claims Act. *Id.* at 796–97.

The *Stone* component of this matrix of litigation has now spawned claims by Rockwell for indemnification under its contract with the government and counterclaims by the government for recoupment of interim defense payments made to Rockwell. Those claims and counterclaims constitute the essential gravamen of the motions pending before this court in the instant case, which has largely been stayed pending the outcome in *Stone.* These same claims and counterclaims, derivative from *Stone*, were the subject of a recent decision by DOE's Contracting Officer responsible for the Rockwell contract, and that decision by the Contracting Officer has since been appealed by

Rockwell to the Department of Energy Board of Contract Appeals.

At this juncture, *Stone* has been finally resolved in all respects pertinent to this case, and the parties have begun to prepare this case for disposition. The immediate questions before the court have been presented by two motions, both made by the government: (1) a motion for leave to file a second amended answer adding a counterclaim for recoupment of interim defense costs paid to Rockwell and amending defenses to Rockwell's original claims and (2) a motion to transfer the actions recently filed by Rockwell with the Department of Energy Board of Contract Appeals to this court and to consolidate those cases with this one. For the reasons explained below, the motion to file a second amended answer is granted in part and denied in part and the motion to transfer and consolidate is denied.

## BACKGROUND [2]

On January 8, 1975, Rockwell and the Atomic Energy Commission entered into a cost-plus-fixed-fee contract, Contract No. AT(29–2)–3533, for the management and operation of Rocky Flats. Compl. ¶ 3; *see* Am. Answer ¶ 45. Thereafter, the contract was redesignated as Contract No. DE–AC04–76DP03533 and was administered by DOE as the successor in pertinent respects to the Atomic Energy Commission. Am. Answer ¶ 45. Effective February 1, 1979, pursuant to the contract's fifth modification, the contract was converted to a cost-plus-award-fee agreement. *Id.* Thus, at the time the present dispute arose, the contract provided for payment to Rockwell of allowable costs plus a base fee and potential award fees. Compl. ¶ 5. According to the contract, award fees "provide[d] an incentive ... sufficient to encourage the attainment of, and to reward the Contractor for, increased proficiency in the performance of the contract." *Id.* ¶ 11. They were calculated every six months and

---

1. The United States had initially declined to intervene in *Stone*. *See* Notice of the United States Declining to Intervene in this Action (Mar. 25, 1992), *United States ex rel. Stone v. Rockwell Int'l Corp.*, Civil Action No. 89–1154 (D.Colo.).

2. The recitations that follow do not constitute findings of fact by the court. Rather, the recited factual elements have been taken from the parties' filings and are either undisputed, except where a factual controversy is explicitly noted, or are alleged and assumed to be true for purposes of the pending motions.

were "based on the Contractor's performance in accordance with the Award Fee Plan set forth in" an appendix to the contract, ranging in value from zero to the maximum allowed under the contract. *Id.* ¶¶ 11–12. Rockwell avers that the contract required award fees to "be determined subjectively by the Award Fee Determination Official" ("AFDO"), defined as the Manager of DOE's Albuquerque Operations. *Id.* ¶ 12.

In February 1989, the parties entered into Modification M128 that "amended the contractual provisions relating to the amounts potentially payable to Rockwell for award fees." Am. Answer ¶ 49. This modification was effective retroactively to October 1, 1988. *Id.*

On October 2, 1990, Rockwell submitted a claim to the Contracting Officer seeking additional award fees for work performed during the two six-month award periods of fiscal year 1989. Compl. ¶ 5. The Contracting Officer denied the claim and Rockwell consequently filed a case with this court's predecessor. *Id.* ¶ 6. On June 12, 1991, Rockwell voluntarily dismissed that action without prejudice and concurrently filed a second claim with the Contracting Officer that was identical to Rockwell's original claim but with a new claim certification. *Id.* ¶¶ 6–7. After waiting sixty days and not receiving a response from the Contracting Officer, Rockwell filed its complaint in this court on August 15, 1991.

In its complaint, Rockwell asserts two causes of action, seeking additional award fees for the two six-month time periods. According to the complaint, following the end of the award fee period of October 1, 1988 through March 31, 1989, Rockwell was informed by representatives of DOE that its performance had been reviewed favorably and that the AFDO had issued a grade of 89% for the entire plant, equal to an award fee of approximately $5 million. Compl. ¶¶ 14, 16. Rockwell alleges that a final award, however, was not made at that time because the AFDO forwarded his findings to DOE in Washington, D.C. for concurrent approval pursuant to a new policy directive by then-Secretary of Energy Admiral James D. Watkins, retired. *Id.* ¶¶ 16–17. On September 20, 1989, Secretary Watkins informed Rockwell that the final award-fee determination for this period would be reduced. *Id.* ¶ 18. Thereafter, Rockwell received, as part of the award-fee determination, a copy of a memorandum from John Meinhardt, then DOE's Acting Assistant Secretary for Defense Programs, to the AFDO, explaining the method by which Rockwell's overall grade for that period was reduced to 84.25%. *See id.* ¶¶ 19–23; Plaintiff's Memorandum in Opposition to Defendant's Motion for Leave to File a Second Amended Answer ("Pl.'s Opp. to Amend") Appendix ("App.") Ex. 2 (Defendant's Stipulation (Sept. 22, 1993) ("Def.'s Stip.")) ¶¶ 6–8 (stating that the award fee for Plant Operations for this period "was determined by DOE headquarters"). Rockwell estimates that the reduction in the award-fee calculation for this period amounted to $2,590,846. *See* Compl. ¶ 33.

With respect to the subsequent award-fee period, from April 1, 1989 through September 30, 1989, Rockwell again alleges that it received a favorable evaluation of its performance by local DOE officials and that Rockwell should have received an award fee of $5,504,895 for this period. Compl. ¶ 24. Ultimately, Rockwell received a letter from DOE dated February 26, 1990, stating that Rockwell would receive an award fee of $1,579,639 for the second six-month period of fiscal year 1989. *Id.* ¶ 26. Thereafter, DOE informed Rockwell, via a letter dated April 10, 1990, that the authority of the AFDO for the period from April 1, 1989 through September 30, 1989 had been delegated to DOE's Manager of the Rocky Flats Office. *Id.* ¶ 27; *see* Def.'s Stip. ¶ 13 (noting that the award fee for this period was "determined by DOE headquarters.").

In its complaint, Rockwell alleges that the authority to determine its award fees for the two six-month periods of fiscal year 1989 was withheld from DOE's AFDO in contravention of the contract. Compl. ¶¶ 31–32, 35–36. Accordingly, Rockwell argues that it suffered injuries in an amount equal to the difference between what the AFDO independently determined to be Rockwell's award fee and what other DOE officials ultimately decided

and actually distributed to Rockwell, *i.e.*, $6,516,102 plus interest. *Id.* at ¶¶ 33, 37.

The government filed its initial answer on November 14, 1991, asserting estoppel as its only affirmative defense and no counterclaims. *See* Answer ¶ 40. Thereafter, discovery in the case was ordered to proceed through March 31, 1993. Order of Jan. 21, 1992 (Judge Yock).[3] The government did not begin its discovery until one month prior to the deadline and consequently moved for a six-month extension of the discovery deadline. Defendant's Motion for an Enlargement of the Discovery Period by Six Months (Mar. 31, 1993). At that time, as part of its discovery request, the government provided Rockwell with two sets of requests for admissions, interrogatories, and document requests. Plaintiff's Motion for a Protective Order (Mar 17, 1993) ("Pl.'s Protective Mot.") Ex. A (Defendant's Discovery Requests (Feb. 23, 1993 and Mar. 1, 1993)). Rockwell objected to the enlargement of time for discovery, *see* Plaintiff's Opposition to Defendant's Motion for a Six–Month Enlargement of the Discovery Period (Apr. 23, 1993) at 1, and sought a protective order on the ground that the government's specific discovery requests were not relevant to the issues pending in the case. Pl.'s Protective Mot. at 1–2. The government countered that its "main defense" in the case was that Rockwell was estopped from recovering any damages from DOE because Rockwell had breached the underlying contract between itself and DOE when it violated certain environmental laws and made misrepresentations to avoid prosecution. Defendant's Memorandum in Opposition to Motion of Plaintiff for a Protective Order (Apr. 26, 1993) ("Def.'s Protective Opp.") at 3, 5–11. The government contended that it sought discovery of facts that would support its affirmative defense of estoppel. *Id.* at 4.

Ultimately, this court denied Rockwell's motion for a protective order, granted the government's motion for an enlargement of time, and ordered that discovery be completed on or before May 1, 1994, specifying that no further extensions would be allowed. Order of Oct. 26, 1993. Moreover, at a hearing on the motions, the court urged the government to determine what specific affirmative defenses it would assert and to plead them appropriately, via an amended answer that correlated the defenses with the allegations in Rockwell's complaint. Hr'g Tr. 7:19 to 8:23 (Oct. 26, 1993); *see also id.* at 3:13–17 (stating that "some type of amendments should have been made to the ... answer ... so the plaintiff had a little bit better idea about what its discovery was to be used for").

Thereafter, further disputes over discovery arose. Some were resolved between the parties themselves, *see* Joint Status Report (Sept. 3, 1993) at 1–2 (stating that plaintiff withdrew without prejudice its motion to compel depositions in exchange for defendant's stipulation of certain facts), while others required the court's intervention. *See* Order of May 24, 1994 (denying plaintiff's motion for a protective order filed April 19, 1994); Order of June 20, 1994 (granting defendant's motion to determine the sufficiency of plaintiff's objections to discovery and to compel responses). Discovery was further extended because the court granted motions to take discovery out of time and to compel responses to interrogatories and requests for admission. *See* Order of May 9, 1994 (granting defendant's motion for additional time to respond to plaintiff's third set of requests for admission); Order of June 20, 1994. Finally, on February 1, 1995, Rockwell moved for a pre-trial scheduling order, but the court denied the motion, *see* Order of Mar. 17, 1995, after defendant objected on the ground that plaintiff's discovery production was incomplete. Defendant's Status Report (Mar. 1, 1995) at 1.

On November 3, 1995, the government filed a motion to stay the proceedings in this case due to its motion to intervene in the *qui tam* action, *United States ex rel. Stone v. Rockwell International Corp.*, pending at that time in the U.S. District Court for the District of Colorado ("District Court"). Defendant's Motion for a Stay of Proceedings (Nov. 3, 1995) at 1.[4] The government also

---

3. Over the course of this case, it has been assigned seriately to six different judges.

4. The United States' motion to intervene in *Stone* was not actually filed until November 14, 1995. *See Stone,* 282 F.3d at 795.

announced its intention to seek leave to amend its answer. *Id.* at 5 n. 2. Thereafter, on January 11, 1996, the government sought leave to amend its answer by adding defenses and counterclaims alleging fraud pursuant to the FCA and the Special Plea in Fraud, 28 U.S.C. § 2514. Defendant's Motion to File Defendant's First Amended Answer Asserting Fraud Counterclaims (Jan. 11, 1996). Following a hearing on June 13, 1996, the court granted defendant's motion to amend, but denied its motion to stay the proceedings because the District Court had yet to rule on the government's motion to intervene. Order of July 17, 1996 at 23, 29. The government filed its amended answer on July 17, 1996 and asserted the affirmative defenses of estoppel and the Special Plea in Fraud under 28 U.S.C. § 2514. Am. Answer ¶¶ 40–41. Defendant also included a counterclaim under the FCA alleging that Rockwell breached its contract with DOE by fraudulent concealment and misrepresentations. *Id.* ¶¶ 42–95.

As part of the court's order granting the government leave to amend its answer, discovery was reopened until December 1, 1996 for the limited purposes of providing Rockwell with an opportunity to prepare to reply to the government's counterclaims and for the government to complete its discovery with respect to its amended answer. Order of July 17, 1996 at 30. Disputes over discovery continued during this period and resulted in the government filing motions to compel discovery on November 1, 1996 and for an enlargement of time on November 7, 1996. The court granted both of these motions and extended discovery through May 1, 1997. Order of Nov. 15, 1996 at 1.

On March 20, 1997, this court granted the government's renewed motion to stay proceedings in this case pending the resolution of *Stone* in the District Court. Order of Mar. 20, 1997 (Judge Yock). The court grounded its stay on the circumstances that the pace of proceedings in the District Court had substantially quickened, judicial economy weighed in favor of a stay, and the District Court was a superior forum to try the contractual fraud claims. *Id.* at 8–9, 12, 14. Several years later, after a final amended judgment upon a jury verdict had been entered by the District Court on June 10, 1999, and all the parties had filed appeals and cross-appeals with the Tenth Circuit, this court continued the stay in this action "until issuance of a final, unappealable decision" in *Stone*. Order of Aug. 30, 1999 (Judge Damich); *see also* Order of Nov. 17, 1999 (denying a motion for reconsideration).

Ultimately, final judgment was entered in the *qui tam* proceedings before the District Court and the Tenth Circuit.[5] In this court,

5. The history of the criminal and civil actions against Rockwell in the District Court and the Tenth Circuit is described in detail in *Stone*, 282 F.3d at 792–97, and *Abraham*, 326 F.3d at 1244–46.

In the *qui tam* action, James Stone, a former engineer at Rocky Flats, filed a complaint alleging that Rockwell had committed multiple violations of state and federal environmental and hazardous waste laws and regulations through its environmental management of Rocky Flats, and consequently violated the False Claims Act, 31 U.S.C. § 3730(b)(1) (*qui tam* provision of the FCA). *Stone*, 282 F.3d at 793–94. After the United States completed its criminal investigation of Rockwell's operation of Rocky Flats and obtained a guilty plea to environmental violations unrelated to its original investigation, it moved to intervene with respect to some, but not all, of the claims made by Mr. Stone. *Id.* at 794–95. The District Court granted the government's motion to intervene on November 19, 1996. *Id.* at 795.

Thereafter, upon the District Court's suggestion, the plaintiffs filed an amended complaint whereby the United States asserted claims of common law fraud, breach of contract, payment by mistake of fact, and unjust enrichment, Stone asserted a claim under the FCA, and both plaintiffs jointly asserted an additional FCA claim. *Stone*, 282 F.3d at 795–96. At trial, a jury found for the plaintiffs on three segments of their joint FCA claim (which had been divided into ten separate time periods) and awarded approximately $1.4 million in damages. *Id.* at 796. The jury found for Rockwell regarding the other seven time periods, and also found for Rockwell on the government's breach of contract claim. *Id.* The District Court dismissed with prejudice the government's claims for common law fraud, payment by mistake of fact, and unjust enrichment. *Id.* Although Stone's individual FCA claim remained to be tried, the District Court entered final judgment on the resolved claims pursuant to Fed.R.Civ.P. 54(b). *Id.* at 797. The District Court's judgment in favor of the plaintiffs amounted to approximately $4.2 million, a tripling of the amount awarded by the jury pursuant to the court's authority under 31 U.S.C. § 3729(a). *Id.*

Rockwell appealed the judgment, asserting constitutional claims related to *qui tam* proceed-

on October 6, 2004, Rockwell again renewed its motion to vacate the stay in the present action because "the Tenth Circuit ha[d] resolved the appeal of all issues in *Stone* arguably relevant to this case." Plaintiff's Renewed Motion to Vacate Stay (Oct. 6, 2004) at 9. After briefing and a hearing, this court granted Rockwell's motion, over the government's objection, and reopened discovery, but requested that no dispositive motions be filed until 90 days after the Tenth Circuit had finally resolved Rockwell's pending motions for a rehearing and rehearing *en banc.* Order of Jan. 18, 2005 (Judge Lettow). The final resolution in the Tenth Circuit occurred on January 4, 2006. *See supra*, n. 5.

On October 3, 2005, the government filed the pending motion for leave to file a second amended answer. Defendant's Motion for Leave to File a Second Amended Answer Adding Counterclaims and Amending Defenses to Rockwell's Claims (Oct. 3, 2005) ("Def.'s Am. Answer Mot."). The government seeks to add three defenses to its amended answer: impossibility, justification, and waiver. *Id.* at 2. The government sup-

ports this request by averring that it previously informed Rockwell of its intent to pursue these defenses in its brief in opposition to Rockwell's motion for a protective order in 1993. *Id.* at 2 (citing Def.'s Protective Opp.). Furthermore, the government seeks to include the defense of prior material breach, Def.'s Am. Answer Mot. at 3, and it moves to add a counterclaim to recoup $4,060,669.03, plus interest, in defense costs that DOE advanced to Rockwell with respect to the *qui tam* action in *Stone,* or, alternatively, requests a set-off in that same amount plus interest against any judgment Rockwell might receive in this action. *Id.* at 1–2.[6]

On May 4, 2005, Rockwell filed a claim with the Contracting Officer for approximately $11.3 million in defense costs that Rockwell had incurred in connection with *Stone* that DOE had never paid. *See* Defendant's Motion to Transfer and Consolidate (Dec. 6, 2005) ("Def.'s Transfer Mot.") Ex. F (Contracting Officer's Final Decision (Sept. 30, 2005)) at 1, 8. In response, the government sought a final de-

---

ings and objecting both to the District Court's finding that Stone was an "original source" under the FCA and to the jury instructions. *Stone,* 282 F.3d at 797. Both Stone and the government cross-appealed on various grounds respecting the claims on which they had lost in the District Court. *Id.* The Tenth Circuit initially affirmed the judgment entered by the District Court, but subsequently granted Rockwell's motion for a rehearing "for the limited purpose[s] of modifying the [original] opinion and ordering a limited remand" such that the District Court might make findings of fact with respect to whether Stone was an "original source" under the FCA. *Id.* at 792, 803, 816. Rockwell's motion for a rehearing *en banc* was denied. *Id.* at 792.

After the District Court made additional findings upon remand, the Tenth Circuit reviewed those findings and ultimately affirmed the judgment of the District Court in its entirety. *United States ex rel. Stone v. Rockwell Int'l Corp.,* 92 Fed.Appx. 708, 711 (10th Cir.2004). Thereafter, the Tenth Circuit denied Rockwell's motions for a rehearing and rehearing *en banc. United States ex rel. Stone v. Rockwell Int'l Corp.,* Order Denying Rehearing and Rehearing *En Banc* (10th Cir. filed Jan. 4, 2006).

Counsel for Rockwell and the government advise that there is a possibility that Rockwell will seek to file a petition for *certiorari* with the Supreme Court of the United States. Hr'g Tr. 4:1–9, 42:2–5 (Feb. 8, 2006).

6. This counterclaim bears some similarities to Rockwell's earlier claim for the costs it incurred in preparing to defend an investigation by the United States into potential criminal environmental charges that were never filed. That investigation was centered on the search warrant executed at Rocky Flats in June 1989. A plea agreement was entered into by Rockwell and the government on March 26, 1992, that resolved criminal charges of which none were "based upon the allegations in the search-warrant affidavit." *Abraham,* 326 F.3d at 1246. The plea agreement permitted Rockwell to recover defense costs for conduct that never "ripened into criminal charges." *Id.* at 1246. That plea agreement was approved by the district court, and thereafter Rockwell sought reimbursement from DOE's Contracting Officer for defense costs associated with the investigation that produced no charges. *Id.* After no response was forthcoming, that claim was deemed denied and Rockwell appealed to the DOE Board of Contract Appeals. *Id.* The Board ruled that the costs for which Rockwell sought reimbursement were allowable. *Id.* at 1246–49; *see In re Rockwell Int'l Corp.,* 02–2 BCA ¶ 32018, 2001 WL 1543836 (E.B.C.A. Oct.31, 2001). On appeal, the Federal Circuit affirmed the Board's decision and held "that Rockwell incurred reimbursable costs when defending itself against allegations of environmental violations that never ripened into criminal charges." *Abraham,* 326 F.3d at 1255.

cision from the Contracting Officer that Rockwell was not entitled to any reimbursement for unpaid defense costs, and instead that Rockwell must repay the government those defense costs related to *Stone* that were previously advanced by DOE. *Id.* at 8–9.[7] The Contracting Officer ultimately denied Rockwell's claim for unpaid defense costs and concluded that Rockwell must also repay the defense costs that DOE had advanced in connection with *Stone*, plus interest. *Id.* Following the Contracting Officer's final decision, Rockwell filed appeals with the DOE Board of Contract Appeals. Def.'s Transfer Mot. Ex. G (Notice of Appeal (Nov. 9, 2005)). The government's second pending motion in the present action seeks transfer of the appeals before the DOE Board of Contract Appeals, Appeal Nos. C–0511395, C–0511396 and C–0511397, to this court, where they could be consolidated with the current case. Def.'s Transfer Mot. at 1, 11.

On February 8, 2006, a hearing was held on defendant's two pending motions. The motions have been fully briefed and are ready for decision.

## ANALYSIS

### A. Motion to Amend Answer to State Additional Affirmative Defenses

The government seeks to amend its affirmative defenses, estoppel and the Special Plea in Fraud, by adding the defense of prior material breach and replacing the defense of estoppel with the defenses of impossibility, justification, and waiver. Def.'s Am. Answer Mot. at 11, 16. The government argues that Rockwell would not suffer any prejudice by replacing the defense of estoppel with the

three separate defenses because Rockwell was informed of this possibility when defendant sought discovery in 1993. *Id.* at 12 (citing Def.'s Protective Opp. at 6–7). Thus, as the government would have it, by way of the pending motion to amend, "the [g]overnment seeks formally to plead the facts developed during th[e] discovery process[es permitted by the court in 1993 and that also took place in *Stone*], and to specify in more detail the legal theories supported by such evidence." Def.'s Am. Answer Mot. at 12. Moreover, the government asserts that it has not unduly delayed amending its answer with the defenses of impossibility, justification, and waiver because either the parties were engaged in discovery or the case was stayed during the bulk of the intervening twelve years. Defendant's Reply Brief in Support of its Motion for Leave to File a Second Amended Answer ("Def.'s Am. Answer Reply") at 3–4.

Rockwell responds that it would be prejudiced if the government were granted leave to amend because there has been "significant delay." Pl.'s Opp. to Amend at 13–18. Furthermore, Rockwell contends that if the government is relying on notice provided in a brief filed in 1993, then the government should have included the replacement defenses in its first amended answer filed in 1996, three years after the alleged notice. *Id.* at 14. In short, Rockwell asserts that the motion to amend should be denied due to the government's failure to previously cure its answer when it otherwise had the opportunity to do so and the prejudice plaintiff will suffer as a result the government's undue delay. *Id.* at 17–18.

Rockwell does, however, concede that "to the extent [d]efendant seeks leave to amend

---

7. These competing claims presented to the Contracting Officer were foreshadowed by a dispute ventilated during the hearing before this court on January 14, 2005, respecting whether the stay then in place should be lifted. At the time the government noted the existence of the issue of the provisional defense costs that had been paid to Rockwell and advised that, because it viewed that issue "to be intertwined with fraud and a part of its FCA counterclaim," there was no requirement that the government submit that issue to the Contracting Officer or further amend its amended answer to assert the claim. Hr'g Tr.

39:20–42:14 (Jan. 14, 2005); *see also* Def.'s Transfer Mot. at 5. Rockwell countered that a final decision of the Contracting Officer was a jurisdictional prerequisite to pursuing the claim. Hr'g Tr. 70:22–72:3 (Jan. 14, 2005). The court, without ruling, suggested that this jurisdictional issue could be avoided if the government simply asked the Contracting Officer for a final decision. Hr'g Tr. 73:1–2 ("the court is really just trying to clear away the underbrush"), 75:11–17, 77:7–8 ("Mr. Kolar can take some steps to try to get a ruling on his counterclaim").

its answer to assert an affirmative defense of 'prior material breach' consistent with [d]efendant's prior descriptions of its original estoppel defense, Rockwell offers no objection." *Id.* at 13 n. 5. Accordingly, the court will grant the government leave to amend its answer to include the affirmative defense of prior material breach. The discussion that follows will accordingly focus only on the three replacement defenses that are contested.

Amendment of pleadings is addressed by Rule 15(a) of the Rules of the Court of Federal Claims ("RCFC"). In pertinent part, that Rule provides that a party may amend its pleading "once as a matter of course at any time before a responsive pleading is served .... Otherwise a party may amend ... only by leave of court or by written consent of the adverse party." RCFC 15(a). The decision whether to grant leave to amend is within the sound discretion of the trial court. *Zenith Radio Corp. v. Hazeltine Research, Inc.*, 401 U.S. 321, 330, 91 S.Ct. 795, 28 L.Ed.2d 77 (1971) (citing *Foman v. Davis*, 371 U.S. 178, 182, 83 S.Ct. 227, 9 L.Ed.2d 222 (1962)). The court should freely grant leave "when justice so requires," *Foman*, 371 U.S. at 182, 83 S.Ct. 227, absent "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, [or] futility of [the] amendment." *Id.* (interpreting Fed.R.Civ.P. 15(a), which parallels RCFC 15(a)); *see Te–Moak Bands of W. Shoshone Indians of Nev. v. United States*, 948 F.2d 1258, 1260–61 (Fed.Cir.1991); *Rodriguez v. United States*, 69 Fed.Cl. 487, 494–95 (Fed.Cl.2006). "If the underlying facts or circumstances relied upon by a [party] may be a proper [defense], [it] ought to be afforded an opportunity to [present its defense] on the merits." *Foman*, 371 U.S. at 182, 83 S.Ct. 227. However, "[l]iberality in pleading, does not bestow on a litigant the privilege of neglecting [its] case for a long period of time." *Te–Moak Bands*, 948 F.2d at 1263 (quoting *Daves v. Payless Cashways, Inc.*, 661 F.2d 1022, 1025 (5th Cir.1981)).

■ A court may deny a party's motion to amend a pleading if that pleading "could have been cured by [an] earlier amendment." *Te–Moak Bands*, 948 F.2d at 1261. In *Te–Moak Bands*, the Federal Circuit denied plaintiffs leave to file two additional exceptions to a governmental agency's report in 1982 because those amendments were based on facts known to plaintiffs when they filed their original petition in 1951, when they filed their first eleven exceptions in 1969, and when they supplemented their pleadings with three additional exceptions in 1973. *Id.* at 1261–62. Consequently, the court held that the plaintiffs could have filed the two further exceptions on three different occasions. *Id.* at 1262; *see Foman*, 371 U.S. at 182, 83 S.Ct. 227 (stating that one reason to deny a motion to amend is a party's failure to correct a deficiency in a pleading when an amendment was previously allowed).

■ A court may also deny a party leave to amend its pleading if the motion "w[as] filed after a period of undue delay." *Te–Moak Bands*, 948 F.2d at 1261. In this respect, the movant "bears the burden of showing that the delay [in filing an amendment to a pleading] was justified." *Alfa Laval Separation, Inc. v. United States*, 47 Fed.Cl. 305, 313 (2000); *see Te–Moak Bands*, 948 F.2d at 1263. In *Te–Moak Bands*, the court held that plaintiffs had not met their burden of showing why there was an eight-year delay between a pertinent supplemental agency report and the filing of plaintiffs' amendments. 948 F.2d at 1263; *see also Alfa Laval*, 47 Fed.Cl. at 314 ("Merely proving that other cases allowed longer delays ... does not suffice to demonstrate entitlement to amendment. Delay must be justified.") (citing *Cupey Bajo Nursing Home, Inc. v. United States*, 36 Fed.Cl. 122, 132 (1996)).

■ The affirmative defenses the government seeks to add to its answer are all premised on events and facts derived from and disclosed by the government's criminal investigation, which spanned from 1989 through 1992, of Rockwell's alleged environmental violations. *See* Def.'s Am. Answer Mot. at 13. The government's affirmative defenses of impossibility and justification al-

lege that DOE had grounds for removing from the AFDO the authority to determine Rockwell's award fees because of DOE's "good faith belief" that the AFDO had become a focus of the FBI's criminal investigation into Rockwell's activities. Def.'s Am. Answer Mot. at 13–14. Furthermore, the government seeks to add the affirmative defense of waiver because it claims that Rockwell approved the decision by DOE's headquarters to intervene in the award-fee determination process subsequent to the allegations raised in the criminal investigation. *Id.* at 15–16.

The government nonetheless asserts that it could not have filed these affirmative defenses in an earlier pleading nor was this motion unduly delayed. Def.'s Am. Answer Reply 3–5. This assertion is problematic. The government's criminal investigation ended 14 years ago, almost 5 years before these proceedings were stayed. *See* Def.'s Am. Answer Mot. at 13 (explaining that FBI agents, in their search warrant affidavit in 1989, declared "that they had probable cause to believe that local DOE officials may have participated in Rockwell's criminal violation."), App. Ex. 14 (Press Release (June 6, 1989)) (noting that the FBI began their search of Rocky Flats with DOE's office in Albuquerque, New Mexico, which included the AFDO's office).

The government unquestionably learned additional information between the time it executed the search warrant in June 1989 and when it made its decision to intervene in the *Stone qui tam* action in November 1995. *See supra,* at 118–19. Importantly, however, about two months *after* the decision to intervene in *Stone,* the government sought leave to file its first amended answer in the present action. *See id.* Now, ten years later, the operative facts on which the government's three replacement defenses are based do not appear to vary materially from the facts the government invoked when it decided to intervene in *Stone.* The court concludes that the

government could have included the additional defenses of impossibility, justification, and waiver in its first amended answer and that it should have done so at that time. *See Spalding & Son, Inc. v. United States,* 22 Cl.Ct. 678, 680 (1991).[8] Indeed, the government was prepared to end discovery in *Stone* on June 1, 1997, approximately two months after a stay was issued in these proceedings. *See* Defendant's Status Report (Mar. 12, 1997) at 4. At that time, the government believed it had enough information to go to trial in *Stone,* and thus the court determines that prior to the stay in March 1997, the government would also have had the requisite factual predicates to amend its answer in this action to state the three replacement defenses.

The government implies that these three amended defenses are being offered now, rather than earlier in the case, because the government is better equipped to frame its defenses in this case in light of the final judgment in *Stone.* Def.'s Am. Answer Reply at 4. This postulate fails, however, because if the government needed additional facts to further support the proposed amended defenses, discovery could have been reopened, as had already been done once before in this case. *See* Order of July 17, 1996 at 30 (granting leave for the government to file its proffered amended answer and reopening discovery for the limited purposes of allowing Rockwell to complete its discovery with respect to the government's amended answer and the government to finish discovery related to fraud issues).

Finally, discovery in this case was available from January 1992 throughout much of 1994, and discovery was reopened from July 1996 until March 1997, when the court stayed the action. The government asserts that Rockwell conducted discovery in this case "with the very issues in view that the [g]overnment now formally pleads." Def.'s Am. Answer Reply at 5. The court therefore concludes that the three replacement affirmative de-

---

8. After the United States had been granted intervention in *Stone* on November 19, 1996, but prior to the stay in these proceedings entered on March 20, 1997, the government had gathered voluminous further materials that likely would have revealed any additional material facts that had not previously been known to the government. *See* Defendant's Status Report (Mar. 12, 1997) at 3 (stating that in February and March of 1997 the government was reviewing over 600 boxes of documents).

fenses should have become readily apparent to the government during the years of discovery in this case, which took place a decade ago, such that these amended defenses could have been put forward prior to entry of the stay in 1997.[9]

In sum, the government has failed to satisfy its burden of justifying why it took eight years from March 1997 before it sought to add affirmative defenses. The government's response that it did not amend its answer to include the defenses of impossibility, justification, and waiver earlier in the proceedings because either the parties were engaged in discovery or the case was stayed is unavailing. Def.'s Am. Answer Reply at 3–5. It was able to file an amended answer in July 1996, after it had learned most if not virtually all of the information that forms the basis of the three affirmative defenses that it currently seeks to add to its pleading. The government on one hand avers that it provided Rockwell with notice that it intended to pursue these theories as early as March 1993, and yet on the other hand it did not seek to amend its answer in such a fashion during the four years that then ensued prior to the stay in these proceedings. Def.'s Am. Answer Mot. at 2. Consequently, the court concludes that the government has failed to justify why it delayed filing these defenses but was able to file other amended defenses in July 1996. Accordingly, the court denies the government leave to amend its answer to replace the affirmative defense of estoppel with the three affirmative defenses of impossibility, justification, and waiver.

The court's decision disallowing amendment of defenses maintains the posture of the case as it existed prior to the government's successful motion for a stay. In its original and first amended answers, the government pled the affirmative defense of estoppel. *See* Answer ¶ 40; Am. Answer ¶ 40. The elements of this defense are that: "(1) [t]he party to be estopped must know the facts; (2) [it] must intend that [its] conduct

shall be acted on or must so act that the party asserting the estoppel has a right to believe it is so intended; (3) the latter must be ignorant of the true facts; and (4) [the party asserting estoppel] must rely on the former's conduct to [its] injury." *Hercules, Inc. v. United States*, 49 Fed.Cl. 80, 88 (2001) (quoting *Emeco Indus., Inc. v. United States*, 202 Ct.Cl. 1006, 485 F.2d 652 (1973)), *aff'd*, 292 F.3d 1378, 1379 (Fed.Cir.2002). In sum, as the U.S. Supreme Court stated, "the party claiming the estoppel must have relied on its adversary's conduct 'in such a manner as to change his position for the worse.'" *Heckler v. Community Health Servs. of Crawford County, Inc.*, 467 U.S. 51, 59, 104 S.Ct. 2218, 81 L.Ed.2d 42 (1984) (internal citations omitted). Moreover, "[a]n explicit representation is not a necessary precondition for a finding of ... estoppel." *Conner Bros. Constr. Co. v. United States*, 65 Fed.Cl. 657, 693 (2005) (citing *Hercules*, 49 Fed.Cl. at 88).

The government itself suggests that it will suffer no prejudice from disallowance of its motion to restate its affirmative defenses. At the hearing on the pending motions, counsel for the government stated that it considered the newly proffered defenses to be encompassed by the broader defense of estoppel:

> What we're trying to do in the [second] amended answer is not ... add[ ] something entirely new to the case. We're refining, we're taking a big catchall category of estoppel—and we also, not in the answer, but in the brief, called it justification—..., and trying to narrow it down to some quite precise legal theories with the supporting facts set forth, derived from discovery, ... in the ... proposed amended answer.

Hr'g Tr. 48:19 to 49:3 (Feb. 8, 2006). In this connection, counsel for the government stated that there are no substantive differences between these new defenses it seeks to include in its second amended answer and the manner in which it has already pled its case.

---

**9.** This is not the first instance in this case in which the government took extensive time to file amended defenses. As early as July 1, 1992, the government had informed the court that it was considering amending its answer to add the affirmative Special Plea in Fraud, a counterclaim pursuant to the FCA, "and other related affirmative defenses." Joint Status Report (July 1, 1992). Over three years later, the government finally sought leave to file its amended answer with the Special Plea in Fraud and aforementioned counterclaim. *See supra*, at 118–19.

Hr'g Tr. 25:22–23 (Feb. 8, 2006) (government counsel's statement that "there is really nothing new in these defenses."). The court may doubt this assertion, but there is no reason now to make any advisory ruling on the matter, and thus the government may pursue its theory that estoppel embraces impossibility, justification, and waiver.[10]

### B. Motions to Add a Counterclaim and to Transfer and Consolidate

■ The government also seeks leave to add a counterclaim for approximately $4 million plus interest for interim defense costs DOE paid to Rockwell in connection with *Stone* prior to the government's motion to intervene in that case. Def.'s Am. Answer Mot. at 5–6; *see* Def.'s Am. Answer Mot.App. Ex. 4 (Letter from Clyde B. Railsback, Contracting Officer, DOE, to G.M. Black, Rockwell (Dec. 6, 1995)) (informing Rockwell that the government had moved to intervene in *Stone* on November 13, 1995 and that any defense costs related to *Stone* incurred by Rockwell after that date would not be reimbursed by the government). In the alternative, the government pleads that this sum should be set off against any judgment this court awards to Rockwell. Def.'s Am. Answer Mot. at 6. The government avers that this counterclaim matured only when a final judgment was entered by the District Court in 1999 and that Rockwell was put on notice that such a claim might be filed, should it face an adverse decision in *Stone*, as early as 1993. *Id.*[11] The government argues that in

seeking to amend its answer to add the new counterclaim, there was no undue delay because, after the District Court entered a final judgment, the stay in this matter continued for another 6 years. Def.'s Am. Answer Reply at 3–5.

Rockwell counters that the government's "extensive delay" in seeking leave to file this counterclaim by itself provides a sufficient basis for this court to deny the motion. Pl.'s Opp. to Amend at 18. Rockwell also argues that the issue of defense costs associated with *Stone*, including also the proposed new counterclaim, is already being litigated in a different forum, the DOE Board of Contract Appeals, and that as the plaintiff, Rockwell has the right to select the forum in which it pursues a claim. *Id.* at 20–22. Rockwell finally contends that the counterclaim should not be included in the present action because it is unrelated to the issues currently being litigated before this court. *Id.* at 20.

The government's counterclaim mirrors the claim that it filed with the Contracting Officer in 2005. Def.'s Am. Answer Reply at 10. The Contracting Officer accepted the government's claim and ordered that Rockwell reimburse the government for the provisional defense costs that DOE had paid in connection with *Stone* prior to the government's motion to intervene, Def.'s Am. Answer Mot.App. Ex. 7 (Contracting Officer's Final Decision (Sept. 30, 2005)) at 9, while denying Rockwell's claim for reimbursement of additional defense costs from *Stone*. *Id.* at 8. Rockwell's appeals to the DOE Board of

---

10. Differences in the scope and effect of these defenses are readily apparent. The Federal Circuit has, for example, accepted a definition of impossibility as follows:

> a party has no duty to perform a contractual obligation if "performance is rendered impossible or impracticable, through no fault of the party, because of a fact, existing at the time the contract was made, of which the party neither knew nor had reason to know and the non-existence of which was a basic assumption of the party's agreement."

*Massachusetts Bay Transp. Auth. v. United States*, 254 F.3d 1367, 1372 (Fed.Cir.2001) (citing *United States v. Winstar Corp.*, 518 U.S. 839, 904, 116 S.Ct. 2432, 135 L.Ed.2d 964 (1996); *Hercules, Inc. v. United States*, 24 F.3d 188, 204 (Fed.Cir. 1994); *Opera Co. of Boston, Inc. v. Wolf Trap Found.*, 817 F.2d 1094, 1100–02 (4th Cir.1987); *Restatement (Second) of Contracts* § 266 (1979)).

11. DOE informed Rockwell that "[p]ayments on behalf of any actions relating to a so-called false claims suit against Rockwell [, *i.e.*, *Stone*,] are considered to be provisional payments pending the final outcome of the case." Def.'s Am. Answer Mot.App. Ex. 3 (Letter from Bruce G. Twining, Manager, DOE Albuquerque Field Office, to J.J. Gibson, Director of Corporate Offices Accounting and Government Fiscal Relations, Rockwell (Apr. 22, 1993)). Moreover, DOE provided Rockwell with defense costs on the presumption that the government had declined to participate "in any such pending case and there is no present expectation of recovery on behalf of the" government. *Id.* Finally, "DOE reserve[d] the right to evaluate the final outcome of the case and to seek reimbursement from Rockwell for any amount paid in the event these underlying assumptions are later determined to be erroneous." *Id.*

Contract Appeals cover both aspects of the Contracting Officer's final decision of September 30, 2005.

The parties agree that these obverse claims, "Rockwell's claim for unreimbursed *Stone* defense costs and the government's claim to recoup previously paid *Stone* defense costs[,] *should be litigated together.*" Plaintiff's Memorandum in Opposition to Defendant's Motion to Transfer and Consolidate ("Pl.'s Opp. to Consolidate") at 1 (emphasis added); *accord* Defendant's Reply in Support of its Motion to Transfer and Consolidate ("Def.'s Mot. to Transfer Reply") at 1. Therefore, the government's motion to amend its answer to include an additional counterclaim is inextricably linked with its motion to transfer the action pending in the DOE Board of Contract Appeals to this court and consolidate it with the present case. Both motions should be resolved consistently.

The pending motion to transfer is largely governed by Section 10(d) of the Contract Disputes Act ("CDA"), Pub.L. No. 95–563, 92 Stat. 2383 (Nov. 1, 1978) (codified, as amended, at 41 U.S.C. § 609(d)), which provides that "[i]f two or more suits arising from one contract are filed in the United States Court of Federal Claims and one or more agency boards ... the United States Court of Federal Claims may order the consolidation of such suits in that court." This court may order consolidation on three alternative grounds: "for the convenience of parties *or* witnesses *or* in the interest of justice." 41 U.S.C. § 609(d) (emphasis added). The court "possesses broad discretion in exercising [this] power to consolidate." *Joseph Morton Co. v. United States*, 757 F.2d 1273, 1280 (Fed.Cir.1985). In the past, when determining whether to transfer and consolidate claims submitted to an agency board with claims already filed in the court, this court and its predecessors have considered such factors as whether the issues arise from the same contract, whether the issues overlap or are duplicative, where the plaintiff initially filed or appealed its claims, whether either forum has made significant progress in rendering judgment on any claim, how resolution of the matters in separate fora would affect the parties', board's or court's re-sources, and whether inconsistent results are likely to arise from actions in separate proceedings. *See Morse Diesel Int'l, Inc. v. United States*, 66 Fed.Cl. 801, 804 (2005) ("*Morse Diesel I*") (citing *Giuliani Contracting Co. v. United States*, 21 Cl.Ct. 81, 83 (1990)); *see also Precision Pine & Timber, Inc. v. United States*, 45 Fed.Cl. 134, 135–36 (1999); *Glendale Joint Venture, et al. v. United States*, 13 Cl.Ct. 325, 327 (1987) (citing *Multi–Roof Sys. Co. v. United States*, 5 Cl.Ct. 245, 248 (1984)).

For this court to have authority to transfer and consolidate an action pending before an agency board, suits arising from one contract must be pending in this court and concurrently pending before an agency board. *See* 41 U.S.C. § 609(d). In this case, that condition has been satisfied. *See Morse Diesel Int'l, Inc. v. United States*, 69 Fed.Cl. 558, 563–64 (2006) ("*Morse Diesel III*") (determining that a "suit" under 41 U.S.C. § 609(d) includes counterclaims) (citing *Frantz Equip. Co. v. United States*, 120 Ct.Cl. 312, 98 F.Supp. 579 (1951); *Glendale*, 13 Cl.Ct. 325). Accordingly, the court is permitted to exercise its discretion to transfer the appeals pending before the DOE Board of Contract Appeals and to consolidate those appeals with the pending action. *See* 41 U.S.C. § 609(d).

As a general matter, "the CDA recognizes that a single government contract may give rise to more than one claim, and that a contractor may pursue his rights by filing 'two or more suits' in either one or more fora." *Placeway Constr. Corp. v. United States*, 920 F.2d 903, 907 (Fed.Cir.1990); *accord Kanag'Iq Constr. Co. v. United States*, 51 Fed.Cl. 38, 46 (2001). In this instance, the issues of reimbursability of *Stone* defense costs and of the proper determination of award fees arise from the same contract but are otherwise unrelated to one another. These disputed matters focus on the interpretation of different portions of the contractual language. The question of award fees centers on the authority of the AFDO under the contract and the related actions of DOE officials in Washington. *See* Joint Preliminary Status Report (Jan. 17, 1992) § 3h. Analysis of the *Stone* defense costs, now

pending before the DOE Board of Contract Appeals, turns on other provisions of Rockwell's contract with DOE, including the General Allowability Clause, the Environmental Costs Clause, the Fines and Penalties Clause, the Contesting Actions Clause, an Employee Defense Provision, and an Anti–Fraud Clause. *See Abraham*, 326 F.3d at 1247–54; Def.'s Am. Answer Mot.App. Ex. 7 (Contracting Officer's Final Decision) at 2–8. This factor thus weighs against transfer. *See Northrop Grumman Corp. v. United States*, 70 Fed.Cl. 230, 234–35, 2006 WL 513669, at *4 (2006).

Moreover, any findings and conclusions made by either this court or the agency board would not affect the claims pending before the other adjudicatory body. *See Morse Diesel III*, 69 Fed.Cl. at 564 (ruling in favor of transfer and consolidation in part because adjudication of a counterclaim would affect the resolution of other claims). There will undoubtedly be some overlap between the two sets of claims. Both before the DOE board and in this court, the government will assert the District Court's judgment, affirmed by the Tenth Circuit, of Rockwell's liability under some of the FCA claims in *Stone* as a pillar of support for the government's position. *See* Def.'s Am. Answer Mot. App. Ex. 7 at 2; Def.'s Mot. to Transfer at 2–5; *see also* Am. Answer ¶¶ 42–95 (defendant's FCA counterclaim). Correspondingly, Rockwell presumably will assert the District Court's judgment, also as affirmed by the Tenth Circuit, in Rockwell's favor on the breach of contract and common law fraud claims in *Stone* as a pillar of support for Rockwell's position.[12] Nonetheless, the agency board could resolve its matter in favor of either party, and yet that disposition would not affect the matter before the court.

This factor consequently also weighs against transfer.

Rockwell's choice of forums is also relevant. Rockwell chose to bring suit against the government with respect to award fees in this court but filed its appeals of the Contracting Officer's Final Decision with the DOE Board of Contract Appeals. Rockwell had the option of filing suit in this court on the issue of *Stone* defense costs but decided against that course of action. Def.'s Am. Answer Mot.App. Ex. 7 at 9–10 (detailing Rockwell's appeal rights). Consequently, Rockwell has expressed "an exclusive preference for one forum over another." *Morse Diesel III*, 69 Fed.Cl. at 564.

Neither this case nor the action before the agency board have progressed to the point where dispositive motions have been filed, although extensive discovery was had in this case during the early– and mid–1990s. Discovery was reopened in January 2005 and a date for its completion has not yet been established. *See* Order of Jan. 18, 2005.[13] Now that the *Stone* case has been resolved in all pertinent respects, both this court and the agency board can be expected to move forward to decision with reasonable alacrity. In that respect, the agency board has an advantage over this court. The agency board previously gained considerable experience with the contractual terms in deciding a cost-of-defense issue under this contract closely related to *Stone* defense costs. *See Abraham*, 326 F.3d 1242 (affirming in its entirety the same board's prior decision respecting costs of defending the criminal investigation that produced no charges). In the pending appeals, the DOE Board of Contract Appeals will face some of the same contract clauses that it had to interpret in its prior decision. *Compare Abraham*, 326 F.3d at 1250 (interpreting 48 C.F.R. § 970.5204–13(e)(16)

---

**12.** Rockwell asserts in its opposition to the government's motion to transfer that the government's FCA counterclaim that was raised in the first amended answer and Rockwell's affirmative defense of equitable recoupment in this case are now moot because of the final judgment in *Stone*. Pl.'s Opp. to Consolidate at 4–8. The government concedes that the counterclaim it asserts against Rockwell in the present action is "identical" to the FCA claim in *Stone*. Def.'s Mot. to Transfer at 2. Nonetheless, the government coun-

ters that these issues are unresolved because "Rockwell has not renounced an intention of seeking Supreme Court review" on the judgment in *Stone*. Def.'s Mot. to Transfer Reply at 4. It would be premature for the court to make any ruling on this issue.

**13.** It appears that no discovery has been taken during the past year during which discovery has again been reopened.

(1988)), 1252–54 (interpreting the Environmental Costs Clause of the contract), *with* Def.'s Am. Answer Mot. Ex. 7 at 6–7 (interpreting the Environmental Costs Clause of the contract and 48 C.F.R. § 970.5204–13(e)(16) (1988)). Consequently, this court "would have to climb a much steeper learning curve," compared to the agency board, if it were to interpret the contractual provisions bearing on defense costs. *See Giuliani Contracting*, 21 Cl.Ct. at 83–84. Therefore, this factor weighs against transfer.

A further consideration entails whether concurrent proceedings in separate fora would duplicate the efforts and resources of the parties and the judiciary. Because the issues now before the agency board and this court are different and involve separate and non-overlapping provisions of the contract, this factor also weighs against transfer.

Overall, the court concludes that it would not be in the interests of justice for this court to order a transfer to it of the claims related to *Stone* defense costs that are now pending before the DOE Board of Contract Appeals.[14] Accordingly, the court denies the government's motion to transfer.

■ In similar circumstances, parties have sometimes agreed that suits arising from the same contract should be heard in the same forum. *See Precision Pine & Timber*, 45 Fed.Cl. at 138 (citing *Guy Roberts Lumber Co. v. United States*, 5 Cl.Ct. 42 (1984); *E.D.S. Fed. Corp. v. United States*, 1 Cl.Ct. 212 (1983)). This is such an instance. The parties have agreed that the actions relating to *Stone* defense costs should be consolidated, and they are now all pending before the DOE Board of Contract Appeals. Accordingly, the only real question before the court has been the forum in which those issues should be litigated. Having determined that

the actions pending before the DOE Board of Contract Appeals should not be transferred to this court, the court correspondingly denies the government's motion to amend its answer for the purpose of including a counterclaim for recoupment of provisional defense costs that were paid to Rockwell in connection with *Stone*. Allowing amendment of the government's answer to state such a counterclaim would cause the recoupment issue to be present in both forums.

## CONCLUSION

For the reasons stated above, the government's motion for leave to amend its answer is GRANTED IN PART and DENIED IN PART. The court grants leave to the government to amend its answer by adding the defense of prior material breach. In all other respects, the motion for leave to amend is denied. The government shall file an appropriate second amended answer on or before March 29, 2006.

The government's motion to transfer and consolidate is DENIED.

It is so ORDERED.

---

14. The government questions whether the DOE Board of Contract Appeals has subject matter jurisdiction to entertain the appeals currently pending before the Board because fraud may be at issue, and it argues that this factor should weigh in favor of the government's motion to transfer and consolidate. Def.'s Mot. to Transfer at 10 (citing 41 U.S.C. § 605(a)). The jurisdictional question thus posed, as the government describes it, "is not a simple one," Def.'s Mot. to Transfer Reply at 6, and it appears that no precedent in the Federal Circuit or this court has

directly addressed the issue. *See Caldera v. Northrop Worldwide Aircraft Servs., Inc.*, 192 F.3d 962, 969 (Fed.Cir.1999); *Martin J. Simko Constr., Inc. v. United States*, 852 F.2d 540, 548 (Fed.Cir. 1988); *Joseph Morton*, 757 F.2d at 1280–81. In light of the uncertainty associated with this jurisdictional question involving the authority of agency boards, the court concludes that the agency board should itself initially decide the question of its own subject matter jurisdiction under the CDA.